386 A.2d 83

**COMMONWEALTH of Pennsylvania**

v.

**Nicholas C. GIORDANO.**

**Appeal of Nino V. TINARI, Esq.**

Superior Court of Pennsylvania.

Submitted March 24, 1977.

Decided April 28, 1978.

544

Henry J. Lunardi and James F. McBride, Philadelphia, for appellant.

Roger B. Reynolds, Norristown, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

This is an appeal from an order of the lower court holding appellant in criminal contempt and fining him $1,000.00. For the reasons stated herein, we reverse the lower court's order.[1] The following facts were recounted by Judge Joseph

---

1. This appeal was originally filed with our court on October 25, 1974. On September 3, 1975, we certified the case to the supreme court on the basis of the Act of July 31, 1970, P.L. 673, No. 223, Art. II, § 202 [17 P.S. § 211.202(5)], because we considered the case to involve

H. Stanziani at the contempt hearing on October 22, 1974, and were not contested by appellant. Appellant entered an appearance for Nicholas Giordano, charged with operating a motor vehicle while under the influence of intoxicating liquor, on May 20, 1974. On Monday, September 16, 1974, appellant failed to appear for trial in Giordano's case, necessitating a continuance, and Judge Stanziani issued a rule to show cause why appellant should not be cited for contempt. The rule was returnable and a hearing was set for October 10, 1974. On September 19, appellant sent a letter to the lower court, informing the court of appellant's involvement in a homicide trial in Philadelphia on September 16, requesting the court to forego the hearing and asserting that verification of the Philadelphia case could be obtained from Judge Stanley Greenberg. The court replied that it intended to proceed with the scheduled October 10th hearing.

No further communication occurred until October 10 when Judge Stanziani received a telephone call from a Wilmington, Delaware judge informing the lower court that appellant was then involved in a trial in Wilmington. Judge Stanziani requested that the judge notify appellant that he was expected to report to the contempt hearing as soon as his Delaware business was concluded. Judge Stanziani was informed by the Delaware court that appellant was released from business there on October 15, 1974. He called appellant's office to leave word that a 1:30 p. m. hearing was scheduled for the next day. Mr. James McBride, appellant's associate, reported to Judge Stanziani that appellant was due in federal court in Washington, D. C., on the 16th and 17th. Mr. McBride called the judge later in the day and was told that if appellant failed to appear, a sheriff would be sent for him.

On October 16, at 12:50 a. m., Mr. McBride telephoned the lower court judge to say that Judge Braman would get in touch with the court. At 1:00 p. m., just one half hour

direct criminal contempt. The supreme court heard oral argument, and, apparently acquiescing in the lower court's classification of the contempt as indirect, on November 17, 1976, transferred the case back to the superior court.

before the scheduled hearing, Judge Braman called to say that appellant was working with local counsel on the Washington case, that a suppression hearing was then underway, but that appellant's presence at the hearing was not essential. Judge Braman agreed to inform appellant to report to the Montgomery County Court as soon as he was finished in Washington. Although appellant's Washington business was concluded late on the 17th, he did not appear in Montgomery County, and Judge Conroy[2] telephoned to excuse appellant. A 9:30 a. m. hearing for October 21 was scheduled. At 9:28 a. m. on October 21, Judge Bonavitacola[3] called to explain that appellant was occupied in his courtroom. Judge Stanziani set a hearing for 9:30 a. m. on the following day. At long last, appellant appeared.

Judge Stanziani referred to appellant's conduct as "a flagrant abuse of your right to practice as an attorney before these courts. I can only state to you that not only your client, Mr. Giordano . . . has been seriously affected, but everybody in this courtroom has been affected by your conduct." (C.H. 7) The lower court judge, not satisfied with appellant's explanation that "[t]he volume of [his] trial work ha[d] been overwhelming," (C.H. 8) held appellant in contempt and set the $1,000.00 fine.

Appellant raises two issues for our consideration. First, appellant asserts that mens rea is a necessary element to establish criminal contempt. Appellant contends that he did not have the necessary intent and that lack of it precludes the finding against him. Appellant's second contention is that the fine of $1,000.00 levied by the lower court was excessive. Because of our disposition of the first issue, we need not address the issue of the fine's severity.

In *Commonwealth v. Washington,* 470 Pa. 199, 368 A.2d 263 (1977), our supreme court reversed a contempt order based upon facts almost identical to those before us. There,

2. Although the judge was not further identified in the record, Judge Stanziani apparently referred to a judge of the Court of Common Pleas of Philadelphia County.

3. See footnote 2.

attorney Johnson failed to appear on the date set for trial and several dates thereafter on which he was to appear for a contempt hearing. In the *Washington* case there were two rules to show cause issued, one covering Johnson's initial failure to appear and a second pertaining to his subsequent failure to appear for the contempt hearing. When the appellant finally appeared, he apologized for any inconvenience and explained that although he had not formally withdrawn his appearance, he had been dismissed as the defendant's counsel before the scheduled trial date.

The court declared:

"'[T]here is no contempt unless there is some sort of wrongful intent.' *Offutt v. United States,* 98 U.S.App. D.C. 69, 232 F.2d 69, 72 (1956), cert. den. 351 U.S. 988, 76 S.Ct. 1049, 100 L.Ed. 1501 (1956). '. . . [A] degree of intentional wrongdoing is an ingredient of the offense of criminal contempt.' *In Re Brown,* 147 U.S.App.D.C. 156, 454 F.2d 999, 1006 (1971). 'Willfulness is, of course, an element of criminal contempt and must be proved beyond a reasonable doubt.' *United States v. Greyhound Corporation,* 508 F.2d 529, 531 (7th Cir. 1974)." *Id.,* 470 Pa. at 203, 368 A.2d at 265.

The court found that the appellant's failure to appear for the second scheduled contempt hearing, of which the appellant received notice, was excused. The lower court was informed by another judge that the appellant had business in his courtroom that same day. The supreme court, stressing that the record contained no proof that the appellant had received notice of his other expected appearances and that noncompliance with certain court orders alone is insufficient to demonstrate wrongful intent and to prove contempt, reversed the lower court's order.

*Washington* requires reversal in the instant case. We note, however, that the unfortunate result of *Washington* is that it renders it very difficult for the courts of this Commonwealth to control the attendance of attorneys who prac-

tice before them. *Washington* holds, in effect, that when an attorney has schedule conflicts he may choose to pursue some commitment other than a given court's scheduled business, and he has no obligation to give the court prior notice.

In the instant case, appellant asserts that he was occupied in a different courtroom on the date set for trial. Although appellant may have had a very valid excuse for his initial failure to appear, appellant misses the point that he should have forewarned the court of his conflict. By complying with Pa.R.Crim.P. 301(b), which mandates that a defendant's application for a continuance, should one prove necessary, be made not later than forty-eight hours before the time set for trial, appellant would have averted the inconvenience and waste that his chosen course engendered.

Certainly, conflicts arise in an attorney's schedule, and cancellations, continuances and rescheduling become a way of life for a busy trial attorney. However, one shows no respect for the court, opposing counsel or the parties when he fails to alert them that he cannot be present for scheduled court business. Where humanly possible, one must give all involved the benefit of prior notice of his unavailability so that alternate plans may be made and available time and resources may not be wasted. Failure to give prior notice is simply irresponsible and discourteous, qualities not becoming to one in the legal profession. Our only hope is that those who pursue such courses of conduct as in *Washington* and the instant case shall remain a decided minority of the Bar.

The order of the lower court is reversed.

SPAETH, J., concurs in the result.

VAN der VOORT, J., dissents.

WATKINS, former President Judge, did not participate in the consideration or decision in this case.