622 A.2d 946

**COMMONWEALTH of Pennsylvania**

v.

**Farrah BROWN, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 8, 1992.

Filed Feb. 3, 1993.

Reargument Denied April 14, 1993.

334

Bradley Bridge, Asst. Public Defender, Philadelphia, for appellant.

Alan Sacks, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before CAVANAUGH, BECK and POPOVICH, JJ.

BECK, Judge.

We decide, *inter alia*, whether an individual's refusal to testify in one courtroom constitutes contempt punishable by imprisonment after a judge in another courtroom issued an order of immunity. We find that the contempt order was properly issued and we therefore affirm the trial court.

In August of 1991, appellant Farrah Brown provided information to police that she was shot several times in the head by Rochelle Harris. One day before Harris' preliminary hearing for aggravated assault, the Commonwealth presented to Philadelphia Common Pleas Court Judge Legrome Davis an immunity petition which provided that appellant Brown intended to

invoke her privilege against self-incrimination when she was called as a witness against Harris. Judge Davis' resulting immunity order stated that appellant was to testify as a witness against Harris and was not permitted to refuse to testify on the basis of her right against self-incrimination.

At Harris' preliminary hearing on January 3, 1992, presided over by Municipal Court Judge Louis Retacco, Brown refused to testify about the shooting and stated that she did not "want to go through with this," did not want to prosecute Harris and also cited the fifth amendment. Judge Retacco informed appellant that she was not permitted, under the authority of the immunity order, to refuse to testify and that if she continued to assert her fifth amendment right, she could be held in contempt of court. Upon subsequent questioning by the assistant district attorney, appellant repeatedly stated that she still did not want to answer the questions and was unwilling to tell the court anything about the incident. Judge Retacco continued Harris' preliminary hearing and referred the matter of appellant's refusal to testify to Judge Davis.

On January 31, 1992, a contempt hearing was held before Judge Davis. At the hearing, Brown's counsel suggested that the hearing be continued until after Harris' preliminary hearing because his client was now willing to testify against Harris. Judge Davis granted the request and instructed the parties to return to his courtroom to resume the proceedings should Brown fail to testify as promised by both her counsel and herself.

On March 16, 1992 Harris' preliminary hearing resumed before Judge Retacco. This time, Brown testified that she did not remember any of the events on the date of the shooting because she was under the influence of drugs at the time. She also testified that she was under the influence of drugs when she implicated Harris in a statement to police. Immediately after the hearing, appellant was brought before Judge Davis who found her in contempt and sentenced her to a prison term of five months and twenty nine days.

Brown raises three issues on appeal. Brown first asserts that the basis for Judge Davis' finding of contempt was that

he did not believe appellant when she testified on March 16, 1992 at the continued preliminary hearing that she had no recollection of the shooting. Under *In re Investigating Grand Jury of Chester County; Subpoena No. 91*, 518 Pa. 485, 544 A.2d 924 (1988), appellant argues, the judge may not make a finding of contempt based solely on his belief that appellant lied when she testified.

We find this rule inapplicable here as the record is quite clear that Judge Davis held appellant in contempt for her refusal to testify on January 3, 1992, at the original preliminary hearing. At the March hearing before Judge Davis, appellant's counsel, Assistant Defender Bradley Bridge, directly asked the court to clarify the basis for its finding of contempt:

Mr. Bridge: If I may Your Honor, the question initially I asked you then is why are we here.

The Court: Well, you are here for failure to answer questions after having been fully advised that she had been immunized and the Fifth Amendment did not apply.

Mr. Bridge: Back on January 3rd?

The Court: Right.

Appellant next argues that even if the contempt was based on her acts on January 3, 1992, it can only be deemed indirect contempt because appellant's refusal to testify did not occur in the presence of Judge Davis. Appellant claims that because the contempt herein is indirect, she should be subject to a fine only.

In the instant matter, appellant was found in violation of the contempt statute, which provides:

The power of the several courts of this Commonwealth to issue attachments and to impose summary punishments for contempts of court shall be restricted to the following cases:

(1) The official misconduct of the officers of such courts respectively.

(2) Disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court.

(3) The misbehavior of any person in the presence of the court, thereby obstructing the administration of justice.

42 Pa.C.S.A. § 4132.

Appellant was found to have disobeyed, as a witness, the lawful process of the court, thereby violating § 4132(2). The sentence for violation of § 4132 is fixed by statute:

Except as otherwise provided by statute, the punishment of commitment for contempt provided in section 4132 (relating to attachment and summary punishment for contempts) shall extend only to contempts committed in open court. All other contempts shall be punished by fine only.

42 Pa.C.S.A. § 4133.

Contempt is divided into two types, direct and indirect. Direct criminal contempt long has been defined as that occurring "in the presence of the court." The meaning accorded that phrase however, is not so narrowly interpreted to include only those acts that the judge sees with his or her own eyes. In *Crozer–Chester Medical Center v. Moran*, 522 Pa. 124, 560 A.2d 133 (1989), our supreme court provided the following definition:

Direct contempt is obstruction by conduct, word or deed in the presence of the court and is a summary offense. It may be sanctioned as civil or criminal contempt depending upon the purposes sought by the court. It is summary because its proofs are evident; the authority and orderly process of the court are directly confronted upon its open record and the evidence is plain and usually self-accusing.

*Id.* 560 A.2d at 136.

While the general definition of direct contempt is an act committed in the presence of the court, many prison sentences for direct contempt have been upheld although the act was not committed "in front of" the judge finding the contempt. *See Commonwealth v. Crawford*, 466 Pa. 269, 352 A.2d 52 (1976) (contemnor stated he would not testify though he did not actually refuse to answer questions in open court); *Commonwealth v. Shaw*, 280 Pa.Super. 575, 421 A.2d 1081 (1980) (defendant failed to return to court for afternoon session).

We have held also that in proceedings before a grand jury, a witness' refusal to testify is considered as taking place in the presence of the court. *See Rosenberg Appeal,* 186 Pa.Super. 509, 142 A.2d 449 (1958). Conversely, we have noted that the mere presence of an officer of the court during a contemptuous act does not make that act a direct contempt. *See Altemose Const. Co. v. Building and Const. Traders Council of Philadelphia,* 449 Pa. 194, 296 A.2d 504 (1972) (acts committed at construction site do not constitute direct criminal contempt even though sheriff was present), *cert. denied,* 411 U.S. 932, 93 S.Ct. 1901, 36 L.Ed.2d 392 (1973).

We need not determine whether the actions of appellant in the instant case are of such a type to be considered "in the presence of the court," as appellant's concern with labeling her contempt is a distinction without a difference. In *Shaw,* the appellant made a claim similar to the instant challenge and asserted that his failure to return to the courtroom for the afternoon session was not the type of contempt that could be punished by imprisonment. This court disagreed:

> More refined, Shaw's argument is that [the statute] limits punishment by imprisonment for contempts ... to situations wherein the contemptuous conduct occurs *in the presence of the court.* But [the statute] limits the use of imprisonment not to conduct occurring *in the presence of the court* ... but to conduct occurring *in open court,* and, as we have pointed out, in open court includes the conduct involved herein.

*Shaw,* 280 Pa.Super. at 582, 421 A.2d at 1085 (citations omitted) (emphasis in original).

Open court is a court "which has been formally convened and declared open for the transaction of its proper judicial business." *Commonwealth v. Ferrara,* 487 Pa. 392, 409 A.2d 407, 411 (1979) (appellants' failure to appear for court constituted direct criminal contempt).

That the Judge who signed appellant's immunity order and made the finding of contempt was not the judge before whom the contemptuous act was committed does not preclude a prison sentence in this instance. Whether the contemptuous

act is considered direct or indirect is irrelevant here because § 4133 permits imposition of a prison sentence anytime a contemptuous act is committed in open court. Appellant's refusal to testify on January 3 took place in open court, on the record; as such, it properly was punished by imprisonment.[1]

Even though an individual may be subject to the imposition of summary punishment for criminal contempt, a contemnor is entitled to the essential procedural safeguards of criminal proceedings. *In re Martorano*, 464 Pa. 66, 346 A.2d 22 (1975). In order to be guilty of criminal contempt, the contemnor must have notice of the specific order and her act of contempt must be volitional. *Commonwealth v. Garrison*, 478 Pa. 356, 386 A.2d 971 (1978). Due process requires that the contemnor have notice of the contempt hearing so that she may make a defense. *Commonwealth v. Jackson*, 367 Pa.Super. 6, 532 A.2d 28 (1987). The record reflects that appellant herein had notice of the order compelling her to testify at Harris' hearing and that her refusal to do so was clearly of her own volition and with knowledge of the ramifications. Appellant claims, however, that she was denied an opportunity to make a defense.

The record reveals that at the hearing Judge Davis asked counsel for appellant whether he had a notice problem:

The Court: I mean do you have a notice problem or are you unable to represent her as to what occurred on January 3rd? Have you only prepared yourself for what happened today and not what happened on January 3rd?

Mr. Bridge: Well, I'll answer your question, but let me answer it with a question also which goes back to my original discussion of why we're here. Because the mat-

1. Our holding is distinct from that in *Commonwealth v. Lofton*, 389 Pa. 273, 133 A.2d 203 (1957). In *Lofton*, the trial judge found appellant in contempt for his vicious, spiteful and insulting remarks to the court and, in part, for his prior refusal to testify at a trial before another judge. Our supreme court held that the court was not permitted to punish the appellant for a contempt committed before another court. In the instant case, Judge Davis ordered appellant to testify at Harris' hearing before Judge Retacco and appellant refused. While appellant's contemptuous act technically took place before another judge, it was a direct violation of Judge Davis' order and therefore punishable by him.

ter on January 3rd as well as today did not take place in front of you but coincidentally on each occasion in front of Judge Ritacco, I assume we are here on an indirect criminal contempt because it did not happen directly in front of Your Honor. Now, the question you are asking now and whether I can represent my client, I assume that I will be able to do so, but I need to talk to her for a moment.

The Court: You were ready to represent her on the 31st.

Mr. Bridge: That's right.

The Court: On the substance of the same issues.

Mr. Bridge: That's right. Based on our discussion on January 31st I thought the issue of January 3rd had been resolved.

\* \* \* \* \* \*

The Court: You wanted to speak to your client, speak to her.

Mr. Bridge: I will. (Mr. Bridge confers with Farah Brown)

The Court: Yes, sir.

Mr. Bridge: Your Honor, I've had an opportunity to speak with Ms. Brown concerning what happened on January 3rd and to answer what you asked me originally, there is no notice problem regarding that, I understand what happened, I've spoken with her about it and I don't have a problem with that.

We are satisfied that appellant received adequate notice in order to make a defense. Appellant further claims that she was denied the opportunity to present an adequate defense. We are cognizant here of the tension between the language of the statute which provides for summary punishment, *see* 42 Pa.C.S.A. § 4132, and the great importance of a contemnor's due process rights. If there was a question as to whether those rights were complied with in a complete manner, we would err in favor of the contemnor. Here, however, we note that at the hearing on post-verdict motions, Judge Davis agreed to reconsider the matter. At that time, appellant's counsel declined to present any evidence other than the testi-

mony of appellant. After hearing appellant's testimony, Judge Davis stated that he heard nothing to change his mind and denied post-verdict motions. Our standard of review for a finding of contempt is clear abuse of discretion. *Estate of Baehr*, 408 Pa.Super. 172, 596 A.2d 803 (1991). We find no abuse here.

Judgment of sentence affirmed.