**COMMONWEALTH of Pennsylvania**

v.

**Darren PRUITT.**

**Appeal of Fred Woodson.**

Superior Court of Pennsylvania.

Submitted Sept. 12, 2000.

Filed Dec. 12, 2000.

John Packel, Public Defender, Philadelphia, for appellant.

Catherine L. Marshall, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before DEL SOLE, HUDOCK and STEVENS, JJ.

HUDOCK, J.:

¶ 1 In this appeal, Appellant seeks review of an order that imposed a fine of $35.00 upon him in relation to his appearance before the Court of Common Pleas of Philadelphia County on September 15, 1999. Because we find that the trial court abused its discretion in holding Appellant in contempt of court, we reverse.

¶ 2 Appellant appeared in the courtroom of the Honorable M. Teresa Sarmina in his capacity as Public Defender on September 15, 1999. Appellant was assigned to handle all the Defender's Association cases listed in the Motions Court. At the instant docket numbers, Appellant represented Darren Pruitt in defense of a Commonwealth appeal of a Municipal Court order that had discharged misdemeanor charges filed against Pruitt because of a violation of Pa.R.Crim.P. 6013 **Prompt Trial—Municipal Court.** Judge Sarmina

presided over Motions Court that day, as a part of her six-week assignment to Motions Court.

¶ 3 The September 15, 1999, date was the second listing for the Pruitt case. Approximately one month earlier, the case had been continued because the court stenographer had not prepared and distributed the notes of testimony from the Municipal Court proceedings, even though the Commonwealth had presented an order requesting that these notes be transcribed. When the case was called by Judge Sarmina this second time, the prosecutor stated that she still did not have the required transcript. The prosecutor informed Judge Sarmina that the stenographer's files indicated that the notes had been delivered; nevertheless, the notes were not in the file. The prosecutor opined that either the District Attorney's Office had never received the notes or they had been misplaced. In response, Judge Sarmina stated, "Well, if you would like this to be continued for [the stenographer] to provide whatever proof they have that your Office picked [the notes] up, I will do that, but you will be fined." N.T., 9/15/99, at 3. After a slight pause in the discussion between the prosecutor and the judge, Appellant informed Judge Sarmina that he had a copy of the notes. He indicated that he had received the file for the Pruitt case the previous day and the notes were a part of the file, although Appellant did not know when his office had obtained the notes.

¶ 4 At that point, the prosecutor requested a short continuance so that she could review Appellant's copy of the notes. The following then transpired:

> THE COURT: And, [Appellant], I thought it was made clear to you that both the Defender Association attorneys and the District Attorneys are supposed to communicate with one another a day or two before the matters are listed to see if both sides have notes.
>
> [APPELLANT]: Respectfully, as I stated, I received the file yesterday and the notes were there. I assumed, number one, that they had the notes if I had them.
>
> THE COURT: [Appellant]. . . .
>
> [APPELLANT]: I know.
>
> THE COURT: There is a policy in place because obviously on more than one occasion either one side or the other has notes but the other does not, otherwise there would be no need for such a policy to check with one another, if obviously you have them, that means that she has them.
>
> [APPELLANT]: I did not get a call from anyone asking did I have the notes, nor did I make contact yesterday afternoon or evening with the District Attorney's Office to tell them that I had the notes, Your Honor.
>
> And I may partially be at fault for not doing that, but I got the file, Your Honor, and the notes were in there, and I saw the matter was listed tomorrow and I assumed that they had the notes.
>
> I did not call over and I did not receive a call asking whether or not I had the notes, Your Honor.
>
> THE COURT: Now, when you were reviewing the trial sheets for today, you knew it said no notes.
>
> [APPELLANT]: Respectfully, I came in yesterday and reviewed the trial sheet and I photocopied the actual sheet.
>
> THE COURT: And it says?
>
> [APPELLANT]: And it said—
>
> THE COURT: "No notes" how many times? Two times not ready.
>
> [APPELLANT]: It did say that, Your Honor.
>
> And because I opened my file when I got back to the office, I saw the notes were there, and they hadn't been there two times. My file actually, Your Honor, does not have a prior listing on the front. My file has one listing, today.
>
> THE COURT: [Appellant], is it not your understanding that what's written on the trial sheets that you copied is

what the court clerk writes down basically letting everyone know what she has from her review of everything that is brought to this Court, which ordinarily it's some 73, 74, 90, a hundred matters, she goes through them with great diligence and notes whether cases are here, whether they're marked "Must be Tried Defense", whether it's a first listing, a third listing, whether there's notes or not, whether something is ready or not, checks off whether the Defender Association is the attorney, she does an incredible amount of work, which then you came over and made a copy of and had the benefit of all of her labor, all for naught.

Had you in fact reviewed that certainly at least as of the time of this morning, you could have passed over the notes to [the assistant district attorney], who has not been sitting here doing nothing, but there were other matters that have been handled by other attorneys as well, and she could have looked at that briefly so the matter could have been disposed of today.

[APPELLANT]: And I believe that's what I was doing, when I became aware, which is right at this moment. I walked in the room, she did not—

THE COURT: That's when the case was finally called to the Bar that you noticed or paid attention to it.

[APPELLANT]: That is correct, Your Honor, I did not approach her and say, hey, I have the notes on this case.

The problem is that we are not receiving the list. I came here because I did not have a list at my office. If we had receive [sic] it maybe a couple of days ahead of time—

THE COURT: If you had received the list, that still would not have told you there were notes or not, depending on when the court clerk would have gotten around to being able to update, whenever that was. Maybe that was two days ago, maybe it was not. If you had a clean list with nothing on, how would that be any—

[APPELLANT]: I don't know. Maybe I wouldn't have seen anything on there.

Just for the record, I received no phone calls in advance that the notes were available from anyone during the last two or three weeks. I would like to just go on record with that. Obviously there's a breakdown in communication.

THE COURT: The Pruitt case will be given a date, and both [Appellant] and [the assistant district attorney] will be fined $35 each for failure to communicate with one another and because obviously the notes of testimony have been done as of August the 24th, based on the order that this Court had signed so that it could be served upon the court reporter, and the case is now having to be continued and would probably not have had to be continued.

N.T., 9/15/99, at 5–10.

¶ 5 Appellant now appeals from the imposition of this fine, raising the following issues: (1) the evidence is insufficient to support a conviction for summary criminal contempt; (2) the court violated due process guarantees by not expressly informing Appellant that he was facing a summary criminal contempt charge; and (3) the court violated Appellant's rights to notice and an opportunity to prepare a defense by not giving advance notice of the nature of the contempt charges.

¶ 6 We note initially that trial courts in Pennsylvania have an inherent power to impose summary punishment for contempt of court. This power is set forth in the Judicial Code, which provides:

**§ 4132. Attachment and summary punishment for contempts**

The power of the several courts of this Commonwealth to issue attachments and to impose summary punishments for contempts of court shall be restricted to the following cases:

(1) The official misconduct of the officers of such courts respectively.

(2) Disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court.

(3) The misbehavior of any person in the presence of the court, thereby obstructing the administration of justice.

42 Pa.C.S.A. § 4132.

■ ¶ 7 Contempt of court may be classified as civil or criminal in nature. The distinction between the two categories lies in the purpose behind the court's finding of contempt. If the dominant purpose of the court is to prospectively coerce the contemnor into compliance with the court's directive, the adjudication is one of civil contempt. *Diamond v. Diamond,* 715 A.2d 1190, 1194 (Pa.Super.1998). However, if the court's dominant purpose is to punish the contemnor for disobedience of the court's order, the adjudication is one of criminal contempt. *Id.* Here, the imposition of a thirty-five dollar unconditional fine, payable to the court, establishes that the court has adjudicated Appellant to be in criminal contempt.

■ ¶ 8 "When reviewing a contempt conviction, much reliance is given to the discretion of the trial judge. Accordingly, we are confined to a determination of whether the facts support the trial court's decision." *Williams v. Williams,* 452 Pa.Super. 52, 681 A.2d 181, 183 (1996), *aff'd,* 554 Pa. 465, 721 A.2d 1072 (1998). " 'Each court is the exclusive judge of contempts against its process, and on appeal its actions will be reversed only when a plain abuse of discretion occurs.' " *Ricci v. Geary,* 447 Pa.Super. 609, 670 A.2d 190, 191 (1996) (quoting *Commonwealth v. Jackson,* 367 Pa.Super. 6, 532 A.2d 28, 31 (1987)). As this Court recently stated:

"The ability to issue a criminal contempt citation empowers a trial judge with the ability to maintain command over his or her courtroom. Effectively, the criminal contempt sanction gives credence to a judge's status as commander in chief over his or her courtroom. If we continually carve away at this power, the sanctity and balance of the courtroom may be in jeopardy."

*Commonwealth v. Jones,* 700 A.2d 1008, 1013 (Pa.Super.1997) (quoting *Commonwealth v. Martorano,* 387 Pa.Super. 79, 563 A.2d 1193, 1200 (1989)). In connection with this sentiment, however, this Court has also noted that a trial court should not use the drastic sanction of finding a person in criminal contempt when a lesser measure will suffice. *Id.*

¶ 9 In the present case, the trial court stated that Appellant's failure to communicate with opposing counsel, "constituted neglect and disobedience and caused a delay in the judicial proceedings." Trial Court Opinion, 3/31/00, at 3. The court also held that Appellant engaged in willful misconduct that disrupted the administration of justice while in the presence of the court. We will discuss the relevant portions of the contempt statute in turn.

■ ¶ 10 To support a finding of contempt under the second paragraph set forth in the Judicial Code, the following four elements must be established:

"(1) The [court's] order or decree must be definite, clear, specific and leave no doubt or uncertainty in the mind of the person to whom it was addressed of the conduct prohibited;

(2) The contemnor must have had notice of the specific order or decree;

(3) The act constituting the violation must have been volitional; and

(4) The contemnor must have acted with wrongful intent."

*Commonwealth v. Zacher,* 455 Pa.Super. 594, 689 A.2d 267, 269 (1997) (quoting *Fenstamaker v. Fenstamaker,* 337 Pa.Super. 410, 487 A.2d 11, 14 (1985)). Moreover, "unless the evidence establishes an intentional disobedience or an intentional neglect of the lawful process of the court, no contempt has been proven." *Ricci v. Geary,* 670 A.2d at 192.

■ ¶ 11 After review, we cannot conclude that it was proven that Appellant's failure to contact the Assistant District Attorney was a volitional act committed with a wrongful intent such that a contempt citation is appropriate. Even assuming, *arguendo*, that Appellant was aware of the court's policy that required counsel to communicate with one another in the days immediately before trial to ensure that everyone has a copy of the notes of testimony, a fact that Appellant disputes, we conclude that Appellant's failure to contact the Assistant District Attorney was not done with a wrongful intent. Appellant stated that he had checked the trial sheet which was marked "no notes," but that this notation was incongruous with his file, which contained a copy of the notes. However, since this was a Commonwealth appeal from a Municipal Court decision, the Appellant could rightly have assumed that, if the notes were missing, the Commonwealth would have taken the initiative to determine if the defenders' office had possession of a transcript. Appellant indicated to the court that he did not receive any telephone calls from the prosecutor, and therefore assumed that the notation of "no notes" on the trial sheet was erroneous. Simply put, there is no evidence that Appellant consciously and deliberately failed to communicate with the Assistant District Attorney. Rather, as soon as Appellant became aware that the Commonwealth did not have a copy of the notes of testimony, he offered to make a copy of his transcript. This is not evidence of either an intentional failure to obey the court order or acting in reckless disregard of the order. Accordingly, we conclude that the evidence is insufficient to support the contempt conviction. *See Zacher*, 689 A.2d at 269–70 (holding that tardiness when appearing in court, only explained as occurring due to counsel's "oversight" was not, without more, evidence of a deliberate or conscious act such that a contempt citation was proper); *Weingrad v. Lippy*, 300 Pa.Super. 76, 445 A.2d 1306 (1982) (reversing a determination of contempt because counsel did not willfully or with a wrongful intent disobey a court order—the court had ordered counsel to submit points for charging the jury by 9:00 a.m. and counsel did not submit his to the judge until 9:23 a.m. because he was waiting for his secretary to complete typing them; this Court noted that a mere showing of noncompliance is never sufficient on its own to prove contempt).

■ ¶ 12 To sustain a conviction pursuant to section 4132(3) above, it must be established beyond a reasonable doubt that Appellant (1) committed misconduct, (2) in the presence of the court, (3) with the intent to obstruct the proceedings, and (4) Appellant's misconduct actually obstructed the administration of justice. *Behr v. Behr*, 548 Pa. 144, 149, 695 A.2d 776, 779 (1997). As noted above, it has not been proven that Appellant's failure to communicate with opposing counsel was done with any intent to obstruct the proceedings. Rather, Appellant immediately offered his assistance when the Assistant District Attorney stated that she did not have a copy of the notes. Appellant apologized to the court for the delay, and explained his assumption that, because he had not been contacted by the prosecutor in regard to her own appeal, he assumed that she had the notes of testimony just as he did. Because Appellant's conduct does not rise to the level of an intentional obstruction of the administration of justice, his contempt citation cannot stand. *See id.* (reversing a finding of contempt, in part, because the Court found that it was not proven that the appellant intended to disrupt the proceedings by bringing evidence into the courtroom in a box which had the word "DEATH" written in faint orange ink on the lid; the appellant's lack of intent was evidenced by his apology during the contempt and his expression of regret that the court had misinterpreted the word as a threat). *Cf. Commonwealth v. Martorano*, 387 Pa.Super. 79, 563 A.2d 1193, 1200 (1989) (upholding a contempt citation under this section based upon the

courtroom behavior of an attorney who was described as stubborn and defiant and who "continually halted the proceedings and stripped the court of its dignity and control").

¶ 13 Because the evidence does not support the conclusion that Appellant acted with wrongful intent as required by the Judicial Code, we conclude that the trial court plainly abused its discretion by holding Appellant in contempt of court.

■ ¶ 14 Moreover, even if the court had properly determined that Appellant committed criminal contempt, we would be compelled to reverse the order based upon the court's failure to ensure that certain procedural safeguards had been protected during the contempt proceedings. A contemnor is entitled to the essential procedural safeguards inherent in criminal proceedings when faced with summary punishment for criminal contempt. *Commonwealth v. Brown,* 424 Pa.Super. 333, 622 A.2d 946, 949 (1993). Due process considerations require that a contemnor be afforded notice of the contempt hearing so that he or she may present a defense. *Id.* Judges may give this notice by warning individuals that their conduct is considered contumacious, or may issue warnings to the parties involved in order to permit the individuals to conform their conduct to the norms expected by the trial judge. *Ricci v. Geary,* 670 A.2d at 193 n. 1.

■ ¶ 15 In response to Appellant's claim that his due process rights were violated, the trial court states that Appellant has waived the claim because he did not object to the procedures employed by the court at the time. However, we will not find waiver in this instance. Nowhere during the proceedings leading up to the court's imposition of a fine did the court mention that it considered Appellant's conduct to be contemptuous. Also, during the proceedings in question, the court did not specify the order that it now relies upon as the foundation for the contempt finding. Under these circumstances, Appellant could not have objected to the procedures used in the hearing as it was not apparent that the court was conducting a contempt hearing. There is no waiver.

■ ¶ 16 After reviewing the transcript of what transpired in the present case, we conclude that Appellant was not provided adequate notice of the accusations against him, nor was he afforded the opportunity to present a defense to the charges. The manner in which the court conducted these proceedings, therefore, deprived Appellant of the due process of law, and his conviction must be reversed. *Ricci v. Geary,* 670 A.2d at 193 n. 1.

¶ 17 The trial court cites *Commonwealth v. Marcone,* 487 Pa. 572, 410 A.2d 759 (1980), as support for the proposition that, because of the inherent nature of the court's authority to adjudicate one in contempt for directly contemptuous actions, "the traditional procedural safeguards involved in an adjudication and all that goes with a conventional court trial" are unnecessary in summary proceedings. Opinion, 3/31/00, at 10. In *Marcone,* the appellant was found to be in contempt and fined $400.00 due to his failure to attend the weekly call of the criminal trial list. The finding of contempt was upheld on appeal. In *Marcone,* there was no question that appellant had been notified of the allegedly contemptuous conduct prior to the imposition of the contempt sanction.

¶ 18 In the present case, at the least, Appellant should have been informed that he was facing a contempt citation during the courtroom exchange with the trial judge. Appellant should have been told during this hearing which order he was being accused of willfully disobeying and also given the opportunity to rebut that accusation. Without this necessary information, Appellant was unable to put on a defense to the charges against him, a fundamental due process violation.

¶ 19 Based upon the foregoing, we conclude that the court abused its discretion

in holding Appellant in contempt. Accordingly, the order must be reversed.

¶ 20 Order reversed.

¶ 21 STEVENS, J., files a Dissenting Statement.

STEVENS, J., dissenting:

¶ 1 I would find that Appellant's failure to abide by the court's clear and specific policy requiring communication between parties constituted intentional neglect as contemplated under 42 Pa.C.S.A. § 4132. Appellant knew that disposition of the Pruitt case was contingent upon receiving the notes of testimony, the lack of which had, up to that time, already caused approximately one month's delay. At stake was the court's legitimate interest in administering justice through the efficient operation of the court calendar. Thus, it can be inferred that Appellant's decision to forego his obligation to so notify the District Attorney's office of the notes was both intentional and one that he should reasonably have understood to be wrongful. Therefore, I respectfully disagree with the Majority's finding of no contempt and would, assuming *arguendo* the deprivation of Appellant's due process rights, remand for a formal hearing on the issue.