J-A30021-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MARVIN HENSON | |
| Appellant | No. 2013 EDA 2014 |

Appeal from the Judgment of Sentence January 27, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-MD-0010666-2013

BEFORE: MUNDY, J., JENKINS, J., and FITZGERALD, J.[*]

MEMORANDUM BY JENKINS, J.:                    **FILED December 24, 2015**

Appellant Marvin Henson appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas following his bench trial convictions for robbery, burglary, criminal mischief, criminal trespass, theft by unlawful taking, receiving stolen property, simple assault, and summary criminal contempt.[1]  We reverse and vacate Appellant's conviction for summary criminal contempt.

The trial court set forth the underlying facts of this appeal as follows:

> On October 20, 2012, Makial D. Pryor-Hand [("Victim")]
> was inside his home located at 7310 Elmwood Avenue, in

---

[*] Former Justice specially assigned to the Superior Court.

[1] This appeal only relates to Appellant's conviction and judgment of sentence for criminal contempt, 42 Pa.C.S. § 4132(3).  Appellant challenges his other convictions in a separate appeal, docketed at 1967 EDA 2014.

Philadelphia, Pennsylvania. N.T.[,] 10/25/2013[,] at 11. Sometime between 10:45 and 11:30 p.m., while [Victim] was in the basement of his home, he heard the front door to the home open, and then heard footsteps on the floor above him. *Id.* at 11-12. He proceeded up the basement steps to investigate. *Id.* at 13.  There, he witnessed [Appellant] standing in his living room. *Id* at 13-14. [Victim] did not know [Appellant]; nor did he give him permission to enter his home. *Id.* at 32.

[Appellant] then pushed and punched [Victim] and a physical altercation ensued, breaking both a dining room table and a mirror hanging on the wall. *Id.* at 15. [Appellant] then grabbed [Victim's] head and pressed his thumbs into his eyes. *Id.* [Victim] fought off [Appellant] and escaped, first to the basement of the home, then to a nearby convenience store in search of help. *Id.* at 16. After returning to the home while the police were present, [Victim] discovered that a 32-inch Vizio television set, a tan and blue workbag, a cell phone, and his mother's pocketbook were all missing from the home. *Id.* at 31. Also, a brown bag with liquor and a 7-11 slurpee cup were found in the home, neither of which belonged to [Victim]. *Id.* at 20.

On the same night as the incident, [Victim's] neighbor, Martha White ([]"Ms. White") heard "scuffing" on the wall that separates the two homes and her dogs began to bark. *Id.* at 48 - 49. Ms. White went outside to investigate, walked to [Victim's] home and looked into his home through the open front door. *Id.* at 50. There, she witnessed a person "throwing stuff like a madman, tossing stuff from side to side all over the place" inside [Victim's] home. *Id.* at 50. Shortly thereafter, Ms. White then saw a male exiting [Victim's] home carrying a flat screen television and a tan bag. *Id.* at 51. Later that same night, [Appellant] was observed by police walking on the street carrying a 32-inch Vizio television set with blood on his wrist and forehead. *Id.* at 59.

[Appellant] testified at trial that he did, in fact, take the television set and the tan bag from [Victim's] home without permission. *Id.* at 87. Swabs taken by police from the second floor hallway, first floor living room, the 32-

- 2 -

inch television, and from the 7-11 cup found in the home matched [Appellant's] DNA profile with a reasonable degree of scientific certainty. *Id.* at 66. [Victim] later identified [Appellant] in photographs and in a video shown to him by police as the man who attacked him inside his home. *Id.* at 28.

During his testimony, [Appellant] described sexual activity with an alleged prostitute, which he claimed took place the night of the robbery. *Id.* at 760-91. The testimony's purpose was, ostensibly, to establish an alternative, permissible reason why [Appellant] was inside [Victim's] home other than to accomplish the theft. [Appellant] alleged that he and a prostitute, whom he had just met that night, could not determine a suitable location to have sex. He claimed that the prostitute then spotted [Victim] walking on the street – whom she did not previously know – approached him, and requested the use of his home for her and [Appellant] to have sex. *Id.* at 80-81. [Appellant] claimed that [Victim] agreed, for only $25, to allow the two complete strangers inside his home for the purpose of sex. *Id.* [Appellant] also alleged that [Victim] was more than hospitable, in that he not only provided a couch for the two strangers to have sex, but also turned on a Brazilian pornographic movie for them, and served drinks. *Id.* at 81-82. The alleged prostitute did not testify.

[Appellant] then depicted the sexual activity with the prostitute and its aftermath, which consisted of profane language (the "F word," for example, was voiced four times[2] (*Id.* at 79, 85, 86)); what can only be described

---

[2] Appellant did use the "F" word as the court noted, and the court was obviously offended. The court first objected to Appellant's language on page 86, when it stated "You have to stop – stop with the language. Okay? Have some respect for the court." Appellant said, "My apologies." He then omitted the "F" word from his testimony and used "heck" and "I got mad." The court did not object again to Appellant's language until he uttered the next bad word, "bullshit."

THE COURT: …I find you guilty on all charges.
*(Footnote Continued Next Page)*

as peculiar slang for lewd aspects; and various, explicit details so obscene and sordid that decorum prohibits listing them here. *Id.* at 82-86.[3]   While [Appellant] testified in this manner, spectators were motivated to leave the courtroom.  N.T. 1/27/14 at 23.  The court twice interrupted his testimony and asked [Appellant] to rein in the (vulgar) details (N.T. 10/25/13 at 83), stop with the

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯

[APPELLANT]:  Oh, that's some bullshit.

THE COURT:  Excuse me?  You want to be in contempt?

[PROSECUTOR]: Yeah, Judge.  I would ask that you hold the defendant in contempt, not only for what – the outburst—

THE COURT:  You are in contempt –

[PROSECUTOR]: but for the way he treated the court during his testimony.

[DEFENSE COUNSEL]: Your Honor, for the contempt hearing, I'm not prepared for that.

THE COURT:  Okay.  We'll bring him back for it then.  We'll do a PSI.  You're in contempt of court.  We'll have a contempt hearing at the time of the PSI.

N.T., 10/25/13, at 107-108.

[3] Again, the court was obviously offended, but it seems Appellant was trying to explain why he was not in the same room as his pants (because he was getting a rag to clean the couch because the girl spit on it) when Victim stole his money, which provoked him to fight and steal his TV, which he otherwise would not have done.  The court cut him off and stated "I don't think we need all these details.  I'm letting the details get a little too far already.  Just get to the -" N.T. at 83.  This took place before the court specifically objected to Appellant's language.  Appellant then continued his story without any more sexual details.

language, and to have some respect for the court. *Id.* at 86.[4]

According to [Appellant], after the sexual encounter, he noticed money missing from his pants. *Id.* at 84. He stated that he blamed [Victim] for the missing money and that the missing money was the catalyst for the physical altercation. *Id.* at 85-86. [Appellant] further alleged that, after the physical altercation, he removed items, including the television set from [Victim's] home as reimbursement for his missing money. *Id.* at 87.

Following the court's verdict, [Appellant] exclaimed that the verdict was "some bull**t." *Id.* at 107. Based on [Appellant's] lewd manner of testimony and his outburst following the verdict, the court found him in contempt. *Id.*

\* \* \*

[Appellant] requested and was granted a waiver of a jury trial. The bench trial occurred before the Honorable Sean F. Kennedy on October 25, 2013. Based on the evidence and testimony, [Appellant] was found guilty of Robbery (18 [Pa.C.S.] §3701(a)(1)(iv)), Burglary (18 [Pa.C.S.] §3502 (c)(1)), and Simple Assault (18 [Pa.C.S.] §2701(a)). On January 27, 2014, [Appellant] was sentenced to one to two years for robbery, four to eight years for burglary, and received no further penalty for the simple assault. All sentences were to run consecutively for a total of five to ten years. The court also found [Appellant] in contempt for disrespecting the court and its proceedings and sentenced him to five (5) months and 29 days [of incarceration]. 42 [Pa.C.S.] § 4132(3).

_____

[4] We note that the court additionally warned the prosecutor regarding her language. After the prosecutor referred to the woman as a "hooker" four times, the court said, "Can we call her a prostitute, please?" N.T. at 90. After the prosecutor said "bang her" three times, the court said "Let's – let's –" and the prosecutor curbed her language. N.T. at 91. After the prosecutor said "you're pissed at him," the court said, "Counsel." N.T. at 91. These incidents took place during cross-examination, after Appellant had been warned about his language.

Supplemental Trial Court Opinion, filed January 16, 2015, at 1-4.[5]

On February 5, 2014, Appellant filed a post-sentence motion to vacate the verdict or modify the sentence. On June 5, 2014, Appellant's post-sentence motion was denied by operation of law. On June 20, 2014, Appellant timely filed a notice of appeal. On December 1, 2014, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and he timely complied on December 11, 2014.

Appellant raises the following issues for our review:

> 1. WAS NOT THE EVIDENCE INSUFFICIENT TO FIND, BEYOND A REASONABLE DOUBT, THAT APPELLANT WAS GUILTY OF CONTEMPT IN VIOLATION OF 42 [PA.C.S.] § 4132(3), THE PROVISION OF THE CONTEMPT STATUTE OF WHICH APPELLANT WAS CONVICTED, IN THAT THE EVIDENCE FAILED TO SHOW THAT ACTUAL OBSTRUCTION OF THE ADMINISTRATION OF JUSTICE OCCURRED AS THE RESULT OF APPELLANT'S CONDUCT, OR THAT APPELLANT INTENDED TO OBSTRUCT THE ADMINISTRATION OF JUSTICE BY HIS CONDUCT?
>
> 2. WAS NOT THE FINDING OF CONTEMPT IMPROPER WHERE THE CONDUCT UPON WHICH THE FINDING WAS PREDICATED WAS PROTECTED BY APPELLANT'S FUNDAMENTAL CONSTITUTIONAL RIGHT OF FREE SPEECH AND HIS FUNDAMENTAL RIGHT TO TESTIFY ON HIS OWN BEHALF AT TRIAL?
>
> 3. WAS NOT THE FINDING OF CONTEMPT IMPROPER WHERE APPELLANT WAS DEPRIVED OF BASIC DUE

_____

[5] The trial court filed an opinion on November 3, 2014, regarding Appellant's appeal of his robbery conviction at 1967 EDA 2014.

PROCESS RIGHTS PRIOR TO THE CONTEMPT AT THE CONCLUSION OF HIS TRIAL ON THE UNDERLYING CHARGES WITHOUT AN EVIDENTIARY HEARING ON THE CONTEMPT CHARGE, AND IN THE ABSENCE OF ANY NECESSITY FOR AN IMMEDIATE FINDING OF CONTEMPT: THE "HEARING" PROCEDURE HELD AT SENTENCING OCCURRED AFTER THE COURT HAD ALREADY ENTERED ITS VERDICT, AND IN ANY EVENT, DID NOT INCLUDE THE PRESENTATION OF EVIDENCE OR OF WITNESSES, AND LACKED ANY OPPORTUNITY FOR APPELLANT TO TESTIFY ON HIS OWN BEHALF AS WELL AS ANY OF THE PROCEDURAL REQUIREMENTS OF A TRIAL?

Appellant's Brief at 4.

In his first issue, Appellant challenges the sufficiency of the evidence for his contempt conviction. He claims that he did not deliberately misbehave or deliberately offend the court.[6] He claims the evidence did not establish actual obstruction of the administration of justice occurred as a result of Appellant's conduct, and that Appellant did not intend to obstruct the administration of justice. He argues that the interruption of the proceedings was momentary, and not a significant disruption. He concludes that, because he did not disrupt the administration of justice, his conduct does not fall within the limited categories for which the court has the authority to impose summary criminal contempt of court, and that his sentence for contempt must be vacated. We agree.

_____

[6] Appellant further contends that the word "bullshit" is not an obscenity or profanity; it is merely vulgar slang that "labels something that the speaker does not like and feels he is unable to change." Appellant's Brief at 14.

We note initially that trial courts in Pennsylvania have an inherent power to impose summary punishment for contempt of court. This power is set forth in the Judicial Code, which provides:

**§ 4132. Attachment and summary punishment for contempts**

The power of the several courts of this Commonwealth to issue attachments and to impose summary punishments for contempts of court shall be restricted to the following cases:

(1) The official misconduct of the officers of such courts respectively.

(2) Disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court.

(3) The misbehavior of any person in the presence of the court, thereby obstructing the administration of justice.

42 Pa.C.S. § 4132.

Our standard of review is as follows:

"When reviewing a contempt conviction, much reliance is given to the discretion of the trial judge. Accordingly, we are confined to a determination of whether the facts support the trial court's decision." ***Williams v. Williams***, 681 A.2d 181, 183 ([Pa.Super.]1996), *aff'd,* 721 A.2d 1072 ([Pa.]1998). "'Each court is the exclusive judge of contempts against its process, and on appeal its actions will be reversed only when a plain abuse of discretion occurs.'" ***Ricci v. Geary***, 670 A.2d 190, 191 ([Pa.Super.]1996) (quoting ***Commonwealth v. Jackson***, 532 A.2d 28, 31 ([Pa.Super.]1987)).

***Commonwealth v. Pruitt***, 764 A.2d 569, 573-74 (Pa.Super.2000).

However,

"Whether sufficient evidence exists to support the verdict is a question of law; thus, [an appellate court's] standard of review is *de novo* and [its] scope of review is plenary." *Commonwealth v. Patterson*, 91 A.3d 55, 66 (Pa.2014) *cert. denied sub nom. Patterson v. Pennsylvania*, 135 S. Ct. 1400 (2015). When examining a challenge to the sufficiency of evidence, we employ the following standard:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super.2011), *appeal denied*, 32 A.3d 1275 (Pa.2011) (quoting *Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super.2005)).

"To sustain a conviction [for summary criminal contempt] pursuant to section 4132(3) … it must be established beyond a reasonable doubt that Appellant (1) committed misconduct, (2) in the presence of the court, (3) with the intent to obstruct the proceedings, and (4) Appellant's misconduct actually obstructed the administration of justice." *Pruitt*, 764 A.2d at 575 (citing *Behr v. Behr*, 695 A.2d 776, 779 (Pa.1997)).

Summary contempt adjudication is appropriate only when the conduct occurred in the judge's presence:

> Where a court acts immediately to punish for contemptuous conduct committed under its eye, the contemnor is present, of course. There is then no question of identity, nor is hearing in a formal sense necessary because the judge has personally seen the offense and is acting on the basis of his own observations.

*Commonwealth v. Moody*, 46 A.3d 765, 772-73 (Pa.Super.2012) (citation omitted).

> To obstruct justice, conduct *must significantly disrupt* proceedings. *In re Campolongo* [,435 A.2d 581 (Pa.1981)]. We noted in *Commonwealth v. Garrison*, 386 A.2d 971 ([Pa.]1978) (plurality opinion), that contempt requires actual, imminent prejudice to a fair proceeding or prejudice to the preservation of the court's orderly procedure and authority. "Remarks that are injudicious, or even disrespectful, will not, without more, justify a summary conviction for contempt of court." *Campolongo*, 435 A.2d at 584.

*Williams v. Williams*, 721 A.2d 1072, 1074 (Pa.1998).

Here, Appellant complied with the court when it asked him to watch his language during his testimony and to make the details of his sexual

encounter less explicit. Appellant apologized for his language and stopped using the "F" word after the court warned him. Further, by uttering the word "bullshit" upon hearing the verdict, Appellant likely intended to express his displeasure as opposed to disrupt the proceedings. Even if Appellant intended to disrupt the proceedings with his word, he did not actually obstruct the administration of justice. **See Pruitt, supra.** Because the facts of record do not support the court's determination, the court abused its discretion in finding Appellant in contempt of court.

Due to the disposition of Appellant's first issue, we need not address his other claims.

Appellant's conviction for summary criminal contempt reversed and vacated.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/24/2015