J-S26013-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| AARON MCCANS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| LA'TOIA BURGESS | |
| APPEAL OF: STACY L. SHIELDS | No. 921 EDA 2015 |

Appeal from the Order November 24, 2014
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 11-00087

BEFORE: OLSON, STABILE and STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.: **FILED MAY 04, 2016**

Appellant, Stacy L. Shields, Esq., appeals *in propria persona* from an order entered in the Civil Division of the Montgomery County Court of Common Pleas on November 24, 2014 that held her in criminal contempt and ordered her to pay a fine and attorneys' fees.[1] After careful consideration, we vacate and remand for further proceedings.

We quote the trial court's recitation of the facts and procedural history of this case.

> The instant matter involves contentious custody and support proceeding[s] which have been before th[e trial c]ourt since January 2011. Appellant entered her appearance for La'Toia

---

[1] "An order imposing sanctions, including one that imposes sanctions on an attorney, is considered a final order and is therefore appealable." **Stewart v. Foxworth**, 65 A.3d 468, 471 (Pa. Super. 2013). As such, we have jurisdiction to address the merits of this case.

*Retired Senior Judge assigned to the Superior Court.

Burgess ("Mother") in this matter on March 15, 2011.[2]   On October 1, 2014, Mother filed an Emergency Petition to Modify Custody ("Mother's Petition").   On October 20, 2015, the [trial c]ourt held a pre-trial short list conference on Mother's Petition. Aaron McCans ("Father"), Father's counsel Brian Smith[, Esq.,] and Mother all appeared for the conference.   Appellant, despite still being listed as Mother's attorney of record, failed to appear. The issue presented in Mother's Petition was narrow and had the potential to be resolved if Appellant had appeared.   Mr. Smith informed the [trial c]ourt that he had tried calling Appellant prior to the conference in an attempt to resolve Mother's Petition, but received no response.   He further informed the [trial c]ourt that he could not attempt to contact Mother directly because she was still technically represented by Appellant.

The [trial c]ourt subsequently called Appellant's office from the bench.   The receptionist who answered the phone informed the [trial c]ourt that Appellant was "with a client."   The receptionist subsequently checked on Appellant's status and following [what the trial court deemed to be] the passage of an unreasonable amount of time, the receptionist informed the [trial c]ourt that Appellant would "call back when she was finished."   The [trial c]ourt again informed the receptionist that it was calling from the bench.   When Appellant finally came to the phone, [it appeared to the trial court that] she lacked any concern for her absence in court.   [In addition, the trial court described Appellant's tone] as disrespectful and dismissive.   At the conclusion of the call, the [trial c]ourt provided Appellant with two options:  (1) withdraw her entry of appearance in the instant matter or, (2) appear for a rescheduled pre-trial short list conference.   Appellant informed the [trial c]ourt that she would withdraw her appearance.

[F]ollowing the call with Appellant, the [trial c]ourt issued an [o]rder (the "October 20, 2014 Order") requiring that Appellant "must withdraw her appearance no later than November 3,

_____

[2] As to the nature, extent, and consistency of Appellant's representation of Mother, Appellant admits in her brief that, "[because Mother] did not have the financial resources to afford representation by an attorney and could not always pay for such representation, [Appellant] continued to represent [Mother] whenever possible."  Appellant's Brief at 5.

2014, or, in the alternative, be present for the rescheduled Short List Conference on November 18, 2014 at 12:00 [p.m.]…." October 20, 2014 Order. The [trial c]ourt filed this Order electronically on the docket and sent the Order directly to Appellant via first class mail. No notices of return appeared on the docket. Appellant failed to withdraw her appearance by the November 3, 2014 deadline. Further, Appellant failed to appear for the pre-trial short list conference scheduled for November 18, 2014, in direct contravention of the October 20, 2014 Order. Again, due to Appellant's absence, the [trial c]ourt was unable to resolve Mother's Petition and had no choice but to schedule a trial in April 2015, nearly six (6) months into the future. The [trial c]ourt never received any correspondence from Appellant indicating that she had any conflicts with the November 18, 2014 conference or that she would be unable to attend for any reason. Appellant did not attempt to contact the [trial c]ourt following the November 18, 2014 conference to explain her absence.

On November 24, 2014, the [trial c]ourt issued an [o]rder finding Appellant in contempt of [c]ourt due to her failure to withdraw her appearance or appear for the November 18, 2014 conference. The [trial c]ourt ordered Appellant to pay a fine of $250.00 to the Montgomery County Bar Association and to reimburse opposing counsel's attorney's fees of $620.00 for his preparation and appearance at the two pre-trial short list conferences held on October 20, 2014 and November 18, 2014.[] The [trial c]ourt also [o]rdered Appellant to be withdrawn as counsel immediately and directed that she may not enter her appearance in the case again without approval of the [trial c]ourt.

Trial Court Opinion, 4/7/15, at 1-3 (footnote omitted).

Appellant filed a motion to reconsider, which the trial court denied. Thereafter, Appellant filed a timely appeal to this Court. Pursuant to an order of court issued pursuant to Pa.R.A.P. 1925(b) on January 5, 2015, Appellant filed a timely concise statement listing the issues she raises in her appellate brief. The trial court issued its opinion on April 7, 2015.

Appellant raises the following questions for our consideration:

[Whether t]he trial court committed an abuse of discretion when it summarily found [Appellant] in [c]ontempt of [c]ourt without finding that her failure to comply with one of two options in an October 20, 2014 [o]rder and be present at a November 18, 2014 hearing was intentional[?]

[Whether t]he trial court committed an abuse of discretion when it summarily found [Appellant] in contempt of court and sanctioned her with fines where summary contempt proceedings were not warranted and without first having given her notice and an opportunity to be heard[?]

[Whether t]he trial court committed an abuse of discretion when it summarily found [Appellant] in [c]ontempt of [c]ourt without first finding that there had been a significant disruption of the [trial c]ourt's November 18, 2014 proceedings[?]

[Whether t]he trial court committed an abuse of discretion when it summarily found [Appellant] in [c]ontempt of [c]ourt for failure to comply with an October 20, 2014 [o]rder directing her to take one of two actions, which [o]rder was vague and uncertain and which did not forewarn that non-compliance therewith would be regarded as a contempt of court[?]

Appellant's Brief at 4.

Appellant's claims challenge various aspects of the trial court's discretionary authority to issue contempt orders. As these claims are interrelated, we shall address them in a single discussion.

"[T]rial courts in Pennsylvania have an inherent power to impose summary punishment for contempt of court. This power is set forth in the Judicial Code[.]" **Commonwealth v. Pruitt**, 764 A.2d 569, 573 (Pa. Super. 2000). Specifically, the Judicial Code provides that:

**§ 4132. Attachment and summary punishment for contempts.**

- 4 -

The power of the several courts of this Commonwealth to issue attachments and to impose summary punishments for contempts of court shall be restricted to the following case:

    (1)    The official misconduct of the officers of such courts respectively.
    (2)    Disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court.
    (3)    The misbehavior of any person in the presence of the court, thereby obstructing the administration of justice.

42 Pa.C.S.A. § 4132.

At the outset, we note our agreement with the trial court that the court's imposition of a fine, together with its directive that Appellant reimburse opposing counsel's fees, establish that the trial court adjudicated Appellant to be in criminal contempt. The dominant purpose of the court's order was to punish Appellant for her failure to either withdraw her appearance in this case or appear in court on behalf of Mother at the November 18, 2014 short list conference. Hence, the court adjudicated Appellant to be in criminal contempt. **See Pruitt**, 764 A.2d at 574 (citations omitted).

Next, we ascertain the precise provision of § 4132 that supports the trial court's order. In prior cases, this Court concluded that § 4132(2) applies to disobedience or neglect by attorneys to the "lawful process of the court." **In the Interest of C.W.**, 960 A.2d 458, 467 n.9 (Pa. Super. 2008). Specifically, we have held that counsel's failure to appear for a scheduled court appearance, counsel's failure to communicate with the opposing party regarding transcripts, counsel's failure to file timely points for charge, and

- 5 -

counsel's failure to file an accounting fall within the scope of § 4132(2). *See Commonwealth v. Kolansky*, 800 A.2d 937 (Pa. Super. 2002); *Pruitt*, *supra*; *Estate of Baehr*, 596 A.2d 803 (Pa. Super. 1991); *Weingrad v. Lippy*, 445 A.2d 1306 (Pa. Super. 1982). Moreover, this Court has generally held that counsel's failure to provide information to a judge implicates the lawful process of the court. *See Appeal of J. Shane Creamer*, 529 A.2d 27 (Pa. Super. 1987). For these reasons, we conclude that a finding of contempt based on Appellant's failure to either withdraw her appearance or appear in court at the November 18, 2014 short list conference falls within the purview of § 4132(2).

> Regarding [§] 4132(2), a finding of contempt pursuant to this subsection must be supported by the following four elements:
>
> (1) The [court's] order or decree must be definite, clear, specific and leave no doubt or uncertainty in the mind of the person to whom it was addressed of the conduct prohibited;
>
> (2) The contemnor must have had notice of the specific order or decree;
>
> (3) The act constituting the violation must have been volitional; and
>
> (4) The contemnor must have acted with wrongful intent.
>
> Further, unless the evidence establishes an intentional disobedience or an intentional neglect of the lawful process of the court, no contempt has been proven. Moreover, a conviction for criminal contempt requires proof beyond a reasonable doubt.

*In the Interest of C.W.*, 960 A.2d at 467 (quotation, quotation marks, and citations omitted).

We have applied the following standard in reviewing contempt orders issued by the trial courts:

When reviewing a contempt conviction, much reliance is given to the discretion of the trial judge. Accordingly, we are confined to a determination of whether the facts support the trial court's decision. Each court is the exclusive judge of contempts against its process, and on appeal its actions will be reversed only when a plain abuse of discretion occurs. As this Court stated:

The ability to raise a criminal contempt citation empowers a trial judge with the ability to maintain command over his or her courtroom. Effectively, the criminal contempt sanction gives credence to a judge's status as commander in chief over his or her courtroom. If we continually carve away at this power, the sanctity and balance of the courtroom may be in jeopardy. In connection with this sentiment, however, this Court has also noted that a trial court should not use the drastic sanction of finding a person in criminal contempt when a lesser measure will suffice.

*Pruitt*, 764 A.2d at 574 (quotations, quotation marks, and citations omitted).

Notwithstanding Appellant's arguments that the October 20, 2014 order was vague and without warning that non-compliance would be regarded as a contempt of court, we have little trouble in concluding that there was sufficient evidence to establish the first two elements listed in the foregoing test. As the trial court found, the transcript of the October 20, 2014 short list conference and the court's order issued on that date make very clear that Appellant needed to withdraw her appearance or appear for court on November 18, 2014 at the rescheduled short list conference. *See* Trial Court Opinion, 4/7/15, at 6-8. Moreover, Appellant's claim that she

should have been forewarned about the consequences of non-compliance is self-serving and unworthy of merit. Hence, the record supports the trial court's determinations with respect to the first two elements of direct criminal contempt.

We are more troubled, however, with the trial court's findings that Appellant acted with volition and wrongful intent, particularly in light of the allegations raised by Appellant on appeal and in view of the fact that the trial court did not conduct a hearing to guarantee that its findings rested on a well-developed record. Here, the trial court reasoned that Appellant's failure to appear constituted a form of direct criminal contempt. **See** Trial Court Opinion, 4/17/15, at 5-6. The court reasoned further that direct contempt was punishable through summary means since inquiry into the identity of the contemnor and nature of the offense is unnecessary because the misbehavior occurs before the court. **Id.** We conclude that the court's approach, under the particular circumstances of this case, exceeded the bounds of its discretionary authority.

The trial court is correct that we have held that an attorney's failure to appear was misconduct that occurred in the presence of the court. **See Himes v. Himes**, 833 A.2d 1124, 1125–1127 (Pa. Super. 2003) (citations and internal quotation marks omitted); **see also Fenstamaker v. Fenstamaker,** 487 A.2d 11, 14 (Pa. Super. 1985) ("A direct criminal contempt consists of misconduct of a person in the presence of the court, or

- 8 -

disobedience to or neglect of the lawful process of the court, or misbehavior so near thereto as to interfere with the immediate business of the court."). In **Himes**, we affirmed the finding of criminal contempt entered when a hearing had to be postponed because an attorney failed to appear. **Himes**, 833 A.2d at 1128. We have also held, however, that when an attorney had conflicting in-court commitments and provided timely and sufficient notice to the trial court, there was no willful intent sufficient to support a contempt finding. **Commonwealth v. Debose**, 833 A.2d 147, 150 (Pa. Super. 2003); **see also Ricci v. Geary**, 670 A.2d 190 (Pa. Super. 1996); **In re Bernhart**, 461 A.2d 1232 (Pa. 1983). We also reversed a finding of contempt entered when an attorney failed to appear due to an in-court conflict, even though the attorney failed to provide notice of the conflict. **See Commonwealth v. Giordano**, 386 A.2d 83 (Pa. Super. 1978). These cases suggest strongly that an attorney's failure to appear at a scheduled court proceeding is not *per se* grounds for a finding of contempt where other circumstances justify or explain the attorney's absence.

In this case, the trial court's order of October 20, 2014 gave Appellant the option of withdrawing her appearance or attending the short list conference scheduled for November 18, 2014. In response to the trial court's order of October 20, 2014, Appellant alleges in her brief that she took the following actions to withdraw her appearance:

> [Following issuance of the trial court's October 20, 2014 order], [Appellant] obtained a Prarcipe to Withdraw form from the

- 9 -

> Montgomery County Prothonotary's office, filled it in, and sent it back to the court. However, because the form required [Mother's] signature, the [c]ourt (per [staff from the trial judge's chambers]) rejected the praecipe and returned it to [Appellant] for [Mother's] signature. With time then of the essence, however, [Appellant] forwarded the Praecipe to Withdraw to [Mother] for her signature and asked her to return it directly to the Prothonotary's Office by November 3, 2014 instead of returning it to [Appellant] who then would have to re-mail it to the Prothonotary's Office.
>
> Believing that [Mother], then had returned the Praecipe to Withdraw to the Prothonotary's Office, [Appellant] believed that her appearance had been withdrawn in accordance with the [c]ourt's October 20, 2014 [o]rder, and did not appear at the November 18, 2014 conference. Unbeknownst to [Appellant], however, [Mother] had been hospitalized and underwent a surgical procedure at Jefferson Hospital on October 30, 2014 and had not returned the praecipe to withdraw directly to the [c]ourt as requested.

Appellant's Brief at 7. Appellant complains that the court denied her the opportunity to proffer this explanation for her non-compliance with the October 20, 2014 order.

In the absence of an evidentiary hearing and against the backdrop of our prior cases, we are reluctant to conclude (as the trial court has done) that Appellant's failure to appear, without more, demonstrated the requisite proof beyond a reasonable doubt that she acted deliberately and with wrongful intent. The order at issue gave Appellant the option to withdraw her appearance prior to the November 18, 2014 short list conference. Appellant has come forward with an explanation declaring that she attempted, albeit unsuccessfully, to exercise that option. Appellant raised this contention in her motion to have the court reconsider its contempt

finding.[3]  The trial court, however, never conducted a hearing pertaining to the sanctions order and, hence, never received or reviewed relevant documents or testimony.  If credited by the court, Appellant's explanation would tend to show that her conduct, while perhaps irresponsible and unprofessional, fell somewhat short of willfully wrong or intentional.  Accordingly, on the limited record before us, we vacate the order imposing sanctions and remand for further proceedings.[4]

Order vacated.  Case remanded.  Jurisdiction relinquished.

---

[3] Appellant attached supporting documents to her reconsideration motion. Exhibit C purports to be a praecipe to withdraw Appellant's appearance dated October 23, 2014 that Appellant claims to have forwarded to Mother. Exhibit D is a cover letter dated October 25, 2014 that encloses the praecipe to Mother.  Lastly, Exhibit E is a letter dated December 2, 2014 from a physician at Jefferson Hospital that states that Mother underwent a surgical procedure at that facility on October 30, 2014.  *See* Appellant's Motion for Reconsideration, 12/11/14.

[4] We do not approve Appellant's behavior in any way and we share the trial court's frustration in this case.  Indeed, Appellant's conduct in representing Mother, admittedly tempered by the client's financial status, falls well short of the standard of zealous advocacy required of Pennsylvania attorneys. Nevertheless, "inasmuch as contempt is a creature of law and not merely of power," *Stewart*, 65 A.3d at 472, we are constrained to vacate the trial court's contempt finding.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/4/2016