J-S50016-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| BRENDA I. DREISBACH | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| ANTONIO MONTEFUSCO | |
| APPEAL OF: JOSEPH P. MAHER | |
| | No. 1851 EDA 2016 |

Appeal from the Order Entered May 10, 2016
In the Court of Common Pleas of Northampton County
Civil Division at No(s): C-48-CV-2015-5404

| | |
|---|---|
| BRENDA I. DREISBACH | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| ANTONIO MONTEFUSCO | |
| APPEAL OF: JOSEPH P. MAHER | |
| | No. 3829 EDA 2016 |

Appeal from the Order Entered November 2, 2016
In the Court of Common Pleas of Northampton County
Civil Division at No(s): C-48-CV-2015-5404

BEFORE: PANELLA, J., MOULTON, J., and RANSOM, J.

MEMORANDUM BY MOULTON, J.:               **FILED OCTOBER 11, 2017**

Joseph P. Maher appeals, *pro se*, from the May 10, 2016 and November 2, 2016 orders holding him in contempt of court in relation to his representation of Brenda I. Dreisbach ("Mother") in the underlying custody/relocation action between Mother and Antonio Montefusco and imposing two separate fines of $500 on Maher for contempt.[1]  We affirm.

At docket 1851 EDA 2016, Maher appeals from a trial court order finding him in contempt for failure to appear at a hearing.  The trial court set forth the factual and procedural history of the appeal in its Pennsylvania Rule of Appellate Procedure 1925(a) opinion, which we adopt and incorporate herein.  Memorandum Opinion Pursuant to Pa.R.A.P. 1925(a), Docket No. 1851 EDA 2016, 8/31/16, at 1-4 ("1925(a) Op. at 1851 EDA 2016").

At docket 3829 EDA 2016, Maher appeals from a trial court order finding him in contempt for filing with this Court a response to an order to show cause on behalf of a client after the trial court ordered him to engage in no further activity on behalf of the client.  The trial court set forth the factual and procedural history of the appeal in its Rule 1925(a) opinion, which we adopt and incorporate herein.  Memorandum Opinion Pursuant to Pa.R.A.P. 1925(a), 2/3/17, at 1-6 ("1925(a) Op. at 3829 EDA 2016").

Maher raises the following issues on appeal:

_____

[1] On March 6, 2016, this Court granted the motion filed by Maher to consolidate his appeals at Docket Nos. 1851 EDA 2016 and 3829 EDA 2016.

A. Whether the trial court committed an error of law and/or abuse of discretion in that the trial court did not have subject matter juris[di]ction of the alleged misconduct pursuant to Rule of Prof. Conduct, 8.4(d), Article V, §10(c) of the Pennsylvania Constitution & Pa. Rules of Disciplinary Enfor[c]ement 103 and 201.

B. Whether the trial court committed an error of law and/or abuse of discretion by refusing to allow Maher to call [Mother] as a witness in the second contempt proceeding on October 21, 2016 based upon a blanket allegation by Attorney Cook that there existed an attorney client privilege to prevent her from test[i]fying?

C. Whether the trial court comm[i]tted an error of law and/or abuse of discretion in that he should not have been excluded from continuing to represent [Mother] particularly in her contempt appeal given that any record had already been made and he had not testified in any matter in prior proceedings in this case as it related to contempt issues?

D. Whether the trial court comm[i]tted an error of law and/or abuse of discretion in that Maher should not have been ex[cl]uded from the appeal in 2200 EDA 2016 [sic] given that the trial court did not have jurisdiction to remove him from the appeal which he had previously filed on behalf of [Mother] and no rationale pursuant to Pa.R.A.P. 1701 existed to preclude him from continuing to prosecute [Mother's] contempt appeal?

Maher's Br. at 4-5.[2]

Generally, whether a trial court possesses subject matter jurisdiction is a question of law for which our standard of review is *de novo* and our scope of review is plenary. ***See Orman v. Mortgage I.T.***, 118 A.3d 403, 406

---

[2] Maher raised four issues in his 1925(b) statement at docket 1851 EDA 2016 and ten issues in his 1925(b) statement at docket 3829 EDA 2016, all of which the trial court addressed in its 1925(a) opinions. On appeal, Maher raises only the four issues referenced above.

(Pa.Super. 2015); *S.K.C. v. J.L.C.*, 94 A.3d 402, 408 (Pa.Super. 2014). Further, we review a trial court's order regarding the admission of evidence for an abuse of discretion. *Commonwealth v. Cascardo*, 981 A.2d 245, 249 (Pa.Super. 2009).

Here, the trial court concluded that it had subject matter jurisdiction to issue the May 6, 2016 and October 21, 2016 contempt orders. 1925(a) Op. at 1851 EDA 2016, at 6-7; 1925(a) Op. at 3829 EDA 2016, at 9-10. Further, the trial court concluded that: (1) it did not err in refusing to allow Maher to call Mother as a witness at the October 21, 2016 hearing, 1925(a) Op. at 3829 EDA 2016, at 16-17; (2) it had jurisdiction to preclude Maher from representing Mother even though Mother had a pending appeal, *id.* at 15; and (3) Maher waived his claim that the trial court erred in precluding Maher from representing Mother by failing to file an appeal from the July 22, 2017 order precluding him from representing Mother, *id.* at 15-16. Following our review of the briefs, the record, and the well-reasoned opinions of the Honorable Jennifer R. Sletvold, we conclude that the trial court did not err or abuse its discretion. We agree with and adopt the trial court's reasoning.[3]

_____

[3] Further, to the extent Maher claims the trial court violated his due process rights, we conclude that the trial court properly concluded that it did not violate Maher's rights and agree with and adopt its reasoning. *See* 1925(a) Op. at 1851 EDA 2016, at 7-14; 1925(a) Op. at 3829 EDA 2016, at 10-13.

- 4 -

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/11/2017



IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY,
PENNSYLVANIA
CIVIL DIVISION

BRENDA I. DREISBACH
    *Plaintiff*                 :      No. C48-CV-2015-5404

                            :

         v.                    :      CIVIL ACTION - LAW

                            :

                            :      1851 EDA 2016

ANTHONY MONTEFUSCO       :
    *Defendant*             :

## MEMORANDUM OPINION PURSUANT TO PA.R.A.P. 1925(A)

This Memorandum Opinion is filed in accordance with Pennsylvania Rule of Appellate

Procedure 1925(a). Joseph P. Maher, Esq. (hereinafter, "Attorney Maher") filed a Notice of

Appeal on June 15, 2016, from this Court's Order dated May 6, 2016 which found Attorney

Maher in contempt of court and fined him $500 for deliberately failing to appear with his client

at a scheduled court appearance. Attorney Maher is a third party in this case as he represented

Plaintiff, Brenda I. Dreisbach (hereinafter, "Mother").[1]

### PROCEDURAL HISTORY

This case originates from Mother's Complaint in Custody against Anthony Montefusco

(hereinafter, "Father"), which was filed on June 19, 2015. Attorney Maher entered his

appearance on behalf of Mother on March 31, 2016. On April 18, 2016, Attorney Catherine

Kollet filed a Petition for Contempt and Sanctions on behalf of Father. In that Petition, Father

---

[1] Attorney Maher's appearance on behalf of Mother has since been withdrawn per this Court's instructions due to a conflict of interest which was placed on the record before the undersigned and in a separate proceeding regarding Mother's relocation request before the Honorable Samuel P. Murray of this Court.

1

alleged that Mother engaged in a course of conduct to intentionally interfere with Father's court-ordered visitation pursuant to the Custody Order and also committed perjury before the Court. A custody conference was held before the Court's Custody Master on April 18, 2016. On April 20, 2012, the Custody Master praeciped this matter for the weekly Miscellaneous Court list. An Order was issued reflecting this praecipe and placing the matter on the April 29, 2016 Miscellaneous Court List for a 9:00 a.m. hearing before the undersigned.

At approximately 4:25 p.m. on April 28, 2016, the day before the scheduled hearing, Attorney Maher telephoned the chambers of the undersigned and verbally requested a continuance on the basis that his "car was in the shop." Through its administrative assistant, the Court denied this last minute verbal continuance request and directed Attorney Maher to appear in Court. Specifically, the Court's administrative assistant, at the direction of the Court, informed Attorney Maher that, as a result of his verbal request for a continuance being denied, he was to appear at the hearing as scheduled with his client. Attorney Maher responded that he would not be at the hearing, and would instead submit a written request for continuance the following morning on the day of the hearing. Attorney Maher was advised that the Court would not receive the request as the undersigned would be sitting on the bench for Miscellaneous Court first thing in the morning and would be expecting Attorney Maher to be present for the scheduled hearing.

On the morning of April 29, 2016, instead of appearing in court with his client as directed, and in direct contravention of our scheduling Order and denial of his verbal continuance request, Attorney Maher faxed the Court a letter at 8:07 a.m., again indicating that he would not appear because he was without a vehicle and enclosing a continuance form. Both Attorney Maher and Mother failed to appear at this hearing. We conducted the hearing as

2

scheduled. Father, Father's counsel, and a subpoenaed witness were all present in order to make a record on Father's underlying Petition. Following this hearing, we found Mother in contempt of court and awarded sanctions to Father.[2] On that same date, we also issued a Rule to Show Cause on Attorney Maher regarding his failure to appear at the hearing.[3]

Subsequent to Attorney Maher receiving notice of the Orders issued as a result of the April 29, 2016 hearing and his failure to appear, Attorney Maher telephoned the undersigned's judicial chambers. Attorney Maher engaged the undersigned's administrative assistant in conversation wherein he expressed his dissatisfaction with the Orders, at which point the undersigned intercepted the telephone call and instructed Attorney Maher to appear on May 6, 2016 pursuant to the Rule Returnable indicated in the aforementioned Rule to Show Cause.

On May 6, 2016, Attorney Maher and Father's counsel appeared before the undersigned for a hearing pursuant to the Rule to Show Cause. After considering all testimony and evidence Attorney Maher had to offer at this hearing, we found that Attorney Maher deliberately neglected the scheduled court appearance on April 29, 2016, of which he had sufficient notice, without a legitimate excuse. We found him in contempt of court and fined him $500. On June 13, 2016, Attorney Maher filed a Motion for Reconsideration of our Order, which Motion we denied.

Attorney Maher filed a Notice of Appeal to the Superior Court of Pennsylvania on June 15, 2016 from our Order finding him in contempt of court.[4] On June 21, 2016 we filed a

---

[2] Since that time, Mother has filed a Motion for Reconsideration, which we denied. Mother appealed our Orders finding her in contempt and denying her Motion for Reconsideration, and that appeal is currently pending before the Superior Court.

[3] The Rule to Show Cause states, in relevant part: "rule to show cause is issued on Attorney Maher to show cause why he should not be held in contempt for failure to appear per court instruction. Rule returnable for May 6, 2016 at 9 AM in courtroom 2."

[4] We note that on June 15, 2016, Attorney Maher filed a Petition for Leave to Proceed In Forma Pauperis for purposes of this appeal; however, following a hearing held on June 16, 2016, the Honorable Anthony S. Beltrami denied this Petition.

3

Memorandum Opinion with the Superior Court indicating our belief that Attorney Maher's appeal was untimely and should be quashed based on the date of the Order finding Attorney Maher in contempt. However, the Superior Court indicated that Attorney Maher's appeal was not untimely based on the date he was served with the Order as opposed to the date the Order was entered on the docket. Via Order dated July 26, 2016, the Superior Court directed Attorney Maher to file a docketing statement pursuant to Pa.R.A.P. 3517. Thereafter, on August 10, 2016, Attorney Maher filed a Concise Statement of Matters Complained of on Appeal.

## QUESTIONS PRESENTED

In Attorney Maher's somewhat confusing Concise Statement, he raises the following as issues:

A. "Whether the Trial Court committed an error of law and/or abuse of discretion in that Maher is of the contention that the procedure – or lack thereof – as to the Rule to Show Cause without a Motion for Contempt, violates Maher's procedural due process rights under the Pennsylvania and U.S. Constitutions and the Pennsylvania and Northampton County Rules of Civil Procedure to have advance notice as to why it is alleged that he has committed some contemptuous action?"

B. "Whether the Trial Court committed an error of law and/or an abuse of discretion in the Petitioner is of the contention that Judge Sletvold exercising a 'duel [sic] role', i.e. hearing officer and 'prosecutor', in this contempt matter constitutes a violation of Maher's substantive due process rights under the Pennsylvania and U.S. Constitutions to have a fair, full and complete, non-prejudicial hearing on his alleged contemptuous behavior under the present exigent circumstances that existed on the evening of April 28 and the morning of April 29, 2016?"

C. "Whether the Trial Court committed an error of law and/or abuse of discretion in that Maher contends that this Honorable Court does not have subject matter jurisdiction of the alleged 'misconduct' [sic] See, Rule of Prof. Conduct, 8.4(d), in this regard, but rather that such authority – pursuant to Article V, §10(c) of the Pennsylvania Constitution and Rule of Disciplinary Enforcement 103 and 201 – lies with The Disciplinary Board of the Supreme Court of Pennsylvania?"

D. "Whether the Trial Court committed an error of law and/or abuse of discretion in that even if the Trial Court did have subject matter [sic] in this matter, the Trial Court did not abide by the Pennsylvania Code of Civility, Part 1 concerning a judge's duties to lawyers, et al. This is particularly so given Maher's exigent circumstances that

4

necessitated the granting of a continuance to the Defendant's Motion for Contempt as to Maher's client, Dreisbach, when such could have been continued until another time or held in another matter, e.g. by telephone, given that there were no exigent circumstances relating to Defendant's Motion that could have not been delayed given that the allegations of said petition related to activity that had allegedly previously occurred over four (4) months prior and which activity was not related to any ongoing activity between the parties or contrary to the best interests to the minor child's custody?"

*See*, Attorney Maher's "Concise Statement of Matters Complained of on Appeal Pursuant to PA. R. A. P. 1925 (b)" at ¶ 4 (A-D).

## DISCUSSION

"Each court is the exclusive judge of contempts against its process," and on appeal, the trial court's finding of contempt will only be reversed when there is clearly an abuse of discretion. *Com. v. Jackson*, 532 A.2d 28, 31 (Pa. Super. 1987). Therefore, when reviewing a contempt conviction, much reliance is given to the discretion of the trial judge. *Com. v. Worthy*, 512 A.2d 39, 40 (Pa. Super. 1986). Unless the trial court overrides or misapplies the law in reaching its conclusion or its judgment is manifestly unreasonable, an appellate court will not find an abuse of discretion merely for an error of judgment. *Com v. Baker*, 564 Pa. 192, 198, 766 A.2d 328, 331 (2001).

In this case, Attorney Maher appears to raise four issues on appeal. His first and second issues appear to pertain to violations of his procedural and substantive due process rights. *See* Attorney Maher's "Concise Statement of Matters Complained of on Appeal Pursuant to PA. R. A. P. 1925 (b)" at ¶ 4 (A-B). Third, Attorney Maher contends that we lack subject matter jurisdiction in this matter as the appropriate authority "lies with the Disciplinary Board of the Supreme Court of Pennsylvania" pursuant to the Pennsylvania Constitution. *Id.* at ¶ 4 (C). Finally, Attorney Maher argues that, given the factual circumstances in the instant case, we

5

violated the "Pennsylvania Code of Civility, Part 1 concerning a judge's duties to lawyers, et al." *Id.* at ¶ *Id.* at ¶ 4(D). We will address each of these issues in turn.

## A. This Court had Subject Matter Jurisdiction to Find Attorney Maher in Contempt

Contrary to Attorney Maher's contention that we had no authority to find him in contempt pursuant to Article V of the Pennsylvania Constitution, we submit that a trial court judge's contempt power flows inherently from historical common law and from the judicial power granted by the Pennsylvania Constitution. It is well-settled that "[c]ourts possess an inherent power to enforce their orders by way of the power of contempt." *Dep't of Envtl. Prot. v. Cromwell Twp., Huntingdon Cnty.*, 613 Pa. 1, 32 A.3d 639, 653 (2011) (citations omitted). This power is derived from "a right inherent in courts *and is incidental to the grant of judicial power under Article 5 of our Constitution.*" *Com. v. McMullen*, 599 Pa. 435, 961 A.2d 842 (2008) (emphasis added). Further, we point out that although the Crimes Code abolished common law crimes (*See* 18 Pa.C.S. §107(b)) it also provided in is preliminary provisions that "[t]his section does not affect the power of a court to ... punish for contempt or to employ any sanction authorized by law for the enforcement of an order ..." *See* 18 Pa.C.S. §107(c).

This inherent power of a trial judge to enforce orders specifically includes the power to impose summary findings of criminal contempt, punishing willful misconduct that obstructs the administration of justice. *Com. v. Garrison*, 478 Pa. 356, 365, 386 A.2d 971, 975 (1978).[5] Nevertheless, in seeking to regulate the manner of the exercise of the power of summary contempt, the legislature restricted the imposition of summary punishments for contempts of court to the following cases:

---

[5] We note that the term "misconduct" simply refers to "behavior that is inappropriate to the role of the actor." *Himes v. Himes*, 833 A.2d 1124 (Pa. Super. 2003).

6

(1) The official misconduct of the officers of such courts respectively.
(2) Disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court.
(3) The misbehavior of any person in the presence of the court, thereby obstructing the administration of justice.

42 Pa.C.S.A. §4132.

In this matter, we imposed a summary punishment for contempt because we found that Attorney Maher had deliberately failed to attend a scheduled court appearance with his client when he had sufficient notice, without a legitimate excuse. A deliberate absence from a scheduled court proceeding, if established, falls within the purview of the prohibition set forth under subsection two of 42 Pa.C.S.A. §4132, set forth above. *See Com. v. Marcone*, 487 Pa. 572, 583, 410 A.2d 759, 765 (1980); *see also Com. v. Debose*, 833 A.2d 147 (Pa. Super. 2003).

Given the foregoing, Attorney Maher's first issue lacks merit. It is without question that this Court possessed the inherent power to find Attorney Maher in contempt for failing to appear for a hearing despite a clear Order of Court and subsequent verbal instruction from this Court, both of which demanded his appearance.

## B. Attorney Maher's Procedural Due Process Rights Were Not Violated

Contempt may be of a civil or criminal nature. This distinction between a civil and criminal contempt is crucial because the classification determines what procedural rights are conferred. *Com. v. Ashton*, 824 A.2d 1198, 1202 (Pa. Super 2003). "The distinction between criminal and civil contempt is ... a distinction between two permissible judicial responses to contumacious behavior. These judicial responses are classified according to the dominant purpose of the court." *Com v. Griffiths*, 15 A.3d 73, 77 (Pa. Super. 2010). It is the judge's purpose in crafting the contempt order that determines whether the Order is characterized as civil or criminal contempt. The purpose of criminal contempt is to vindicate the Court's authority,

7

and therefore, to punish the contemnor for his actions; the contemnor, unlike with civil contempt, is powerless to escape sanctioning by compliance. *See Ingebrethsen v. Ingebrethsen*, 661 A.2d 403, 405 (Pa. Super. 1995).

As discussed *supra*, we intended to make, and did make, an adjudication of criminal contempt that falls within the purview of 42 Pa.C.S.A. §4132 (2). We did so to admonish Attorney Maher and to vindicate the authority of the Court. This was not a situation where Attorney Maher could remedy his misconduct by compliance. Summary action permits the court to eliminate traditional steps involved in an adjudication, including all that goes with a conventional court trial such as "the issuance of process, service of complaint and answer, holding of hearings, taking evidence, listening to arguments, awaiting briefs, [and] submission of findings." *See Sacher v. United States*, 343 U.S. 1, 9, 72 S.Ct. 451, 455, 96 L.Ed. 717, 724 (1952). However, we acknowledge that the contemnor must be given an opportunity to rebut the charges. *Com. v. Pruitt*, 764 A.2d 569, 576 (Pa. Super. 2000).

A trial court may not properly hold an attorney in contempt and impose a fine for the failure to appear in opposition to a motion for sanctions where counsel is not given any notice that a charge of criminal contempt is being considered by the Court and is given no opportunity to be heard in response to such a charge. *See Simpson v. Allstate Ins. Co.*, 504 A.2d 335, 338 (Pa. Super. 1986). In the case *sub judice*, Attorney Maher was afforded procedural safeguards. He was given notice that a charge of contempt was being considered by the Court, and he was afforded an opportunity to be heard.

Specifically, we issued a Rule to Show Cause on Attorney Maher on April 29, 2016, and Attorney Maher responded to the Rule Returnable on May 6, 2016 when he appeared for a hearing regarding why he should not be held in contempt for failure to appear for the hearing in

8

the underlying matter that had been scheduled for April 29, 2016 on Father's Petition per Order and per subsequent Court instruction. Despite Attorney Maher's contention that he did not voice objections at the May 6, 2016 hearing because "he was not of the opinion as to him making objections to the various exhibits or the testimony surrounding said exhibit or other matters would not [sic] be considered" (Concise Statement at pp. 2-3), Attorney Maher was given an unfettered opportunity to be heard on May 6, 2016.

Subsequent to the Court making a record of what had transpired, we asked Attorney Maher to tell the Court what he wanted it to know regarding his failure to appear and the reason that he summarily decided not to appear for his court-ordered appearance on April 29, 2016. *See* Notes of Testimony (N.T.), 5/6/16, at p. 6. Attorney Maher used this time to explain that he had problems with his vehicle, that he could not find an alternative ride to get to the courthouse, and that he was not "aware of any real suitable taxi service." N.T., 5/6/16 at pp. 6-8. Attorney Maher was also offered the opportunity to provide evidence to prove to the Court that his vehicle was, in fact, in the garage as he indicated. However, Attorney Maher could not offer a receipt because this garage "doesn't give any receipts." *Id.* at p. 9-10. The following exchange took place on the record:

**THE COURT:** What's the name of that garage?

**ATTORNEY MAHER:** I don't remember what the guy's name – I just recently used him. A friend of mine found him. He's relatively inexperienced. His name is Eddie.

**THE COURT:** Did you provide the Court with any receipts that your car was, in fact, there?

**ATTORNEY MAHER:** He doesn't give any receipts, Your Honor.

*Id.* at pp. 9-10. While Attorney Maher did offer an apology during the course of his explanation, we found his testimony to be lacking in credibility. His "mea culpa" attitude and apology were insincere and manipulative. He failed to sway our decision to hold him in contempt of court.

As we noted on the record during the May 6, 2016 hearing on the rule to show cause, Attorney Maher has a penchant for making *ex parte* communications to the Court. He has, in the past, sent an *ex parte* letter to this Court consisting of legal arguments. As a result, we had sent him correspondence instructing him to refrain from sending such communication to the Court.[6] Despite our correspondence to Attorney Maher alerting him as to the impropriety of *ex parte* communications, Attorney Maher has made several *ex parte* communications to the Court during the course of the instant matter, including, *inter alia*, a telephone call during which he attempted to rationalize why he failed to appear[7] and engaged our administrative assistant in a discussion regarding his dissatisfaction with Court Orders.

Our findings with respect to Attorney Maher's contempt are bolstered by the fact that Attorney Maher has a record of ignoring Court directives and has previously been disciplined for evading proper procedure. Moreover, as we evidenced on the record, this is not the first time that Attorney Maher has used his car problems as an excuse to avoid court deadlines. In a separate matter which was before the Honorable Kimberly McFadden, Attorney Maher filed a "Motion for Reconsideration - *Nunc Pro Tunc* Concise Statement Filing" in which he blamed his car troubles for a late filing. In paragraph 5 of this Motion, Attorney Maher indicated that he could not meet his March 10, 2016 filing deadline because his "... automobile experienced a major mechanical failure." He went on to state: "[t]hrough a series of third party delays and miscommunications, [Attorney Maher] did not receive his one and only personal vehicle back in

---

[6] This correspondence was made part of the record during the May 6, 2016 hearing.

[7] This call was made after the Rule to Show Cause was issued, but before the Rule Returnable date.

10

his possession until late in the day on Friday, March 11, 2016, even though he had anticipated having such back into his possession original [sic] by mid-day March 10th and then subsequently by mid-day on March 11th." [8]

## C. Attorney Maher's Substantive Due Process Rights Were Not Violated

As discussed, we found Attorney Maher to be in criminal contempt pursuant to 42 Pa.C.S.A. §4132 (2). The appellate courts of this Commonwealth have interpreted this Section as requiring the following four elements to support a finding of criminal contempt for "disobedience or neglect":

(1) The [court's] order or decree must be definite, clear, specific and leave no doubt or uncertainty in the mind of the person to whom it was addressed of the conduct prohibited;
(2) The contemnor must have had notice of the specific order or decree;
(3) The act constituting the violation must have been volitional; and
(4) The contemnor must have acted with wrongful intent.

---

[8] Apart from the aforesaid instances, Attorney Maher is well-known to the other judges of Northampton County, as well as Lehigh County, for being disrespectful of the Court's time and procedure and for raising frivolous issues. Significantly, the Superior Court noted Attorney Maher's incessant disregard for court Orders in its opinion filed on December 14, 2015, which stemmed from a custody case in Lehigh County. In this custody matter, the trial court ordered Attorney Maher not to represent the father because he had previously represented the mother in other unrelated cases. The mother filed a contempt petition alleging that Attorney Maher filed motions on the father's behalf after being ordered not to represent father. The trial court found Attorney Maher in contempt as a result. Following the custody trial in Lehigh County, during which the father represented himself, the trial court entered an Order granting primary physical custody to mother. The father, through Attorney Maher, filed a notice of appeal and a concise statement of errors complained of on appeal. On appeal, the Superior Court stated:

Instead of appealing the preclusion issue separately, as would be procedurally and ethically proper at this point, Attorney Maher has continued in his malfeasance by bringing the instant appeal on behalf of both himself and Father. *We cannot stress enough our condemnation of Maher's continued disregard for the trial court's orders.* Upon the return of this custody matter to the trial court, *we recommend the court explore disciplinary action and additional sanctions* as it sees fit.

*E.R. v. J.N.B.*, 129 A.3d 521 (Pa. Super. 2015), *appeal denied*, 135 A.3d 586 (Pa. 2016) (emphasis added).

Yet another instance of Attorney Maher's disregard for the Court's time and processes occurred in Northampton County in a Protection from Abuse (PFA) matter involving Mother and Father in the instant case. The Honorable Anthony Beltrami denied Mother a PFA against Father. Attorney Maher then appealed Judge Beltrami's Order, and after Judge Beltrami authored an opinion pursuant to Pa.R.A.P. 1925(a), the appeal was quashed due to Attorney Maher's failure to file a brief.

11

*Com. v. Zacher*, 689 A.2d 267, 268–69 (Pa. Super. 1997) (citations omitted). Further, in order to prove contempt, the evidence must support that the alleged contemptuous act was "intentional disobedience or an intentional neglect of the lawful process of the court." *Pruitt*, 764 A.2d at 574 (citation omitted). Our Superior Court has held that in order to prove that an attorney acted intentionally, it is sufficient to demonstrate that they acted with reckless disregard. *McCusker v. McCusker*, 631 A.2d 645 (Pa. Super. 1993). A subjective intent to obstruct the administration of justice is not a requisite of criminal contempt. *Com. v. Owens*, 496 Pa. 16, 24, 436 A.2d 129, 133 (1981).

The first element requires that an officer of the Court clearly and without a doubt know that he was required to appear in court as scheduled. The evidence here shows that Attorney Maher knew, without a doubt, of the Order requiring his appearance on April 29, 2016 because he twice requested a continuance of the hearing. He does not contest that he was scheduled to appear, but rather, he objects to our unwillingness to grant him a continuance.

The second element, whether Attorney Maher had notice of the specific Order, is again satisfied because he contacted the Court *in response* to the Order requiring his appearance in court on April 29, 2016.

The third element focuses on whether Attorney Maher's violation was volitional. Attorney Maher made a deliberate choice not to be present as ordered. There is no question that Attorney Maher was aware of the court-ordered obligation to appear and purposely failed to meet this obligation. His failure to appear was not a mere oversight, and this was demonstrated by his conversation with the Court's administrative assistant wherein, despite being told that he must attend the hearing the next day, he was adamant that he would be submitting a written continuance on the morning of the hearing rather than appearing. Further, our directive for

12

Attorney Maher to be present at the hearing, despite his car trouble, was not unreasonable. This was not a situation where Attorney Maher's failure to appear was due to conflicting in-court commitments or due to an overly burdensome caseload. *See In re Bernhart*, 501 Pa. 428, 461 A.2d 1232 (1983); *Matter of Ring*, 492 Pa. 407, 424 A.2d 1255 (1981); *Com. v. Debose*, 833 A.2d 147 (Pa. Super. 2003); *Com v. Kolansky*, 800 A.2d 937 (Pa. Super. 2002). There were avenues open to Attorney Maher, a local attorney,[9] by which he could have arrived at the courthouse without resorting to deliberately disregarding his responsibility to the Court and his former client, *i.e.* transportation via Uber or an alternate taxi service. Further, he waited until close to the close of business the afternoon before the hearing to alert the Court, via telephone, of his alleged car trouble, and he did not notify opposing counsel. Further, he did not advise his client to appear.

Finally, the third element regarding volition goes hand-in-hand with the fourth element which addresses whether the contemnor acted with wrongful intent. "The minimum intent required to prove contempt is 'a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful.' ... However, ... direct (as well as subjective) intent is not necessary where a reckless disregard for the directions of the court can be proven." *McCusker*, 631 A.2d at 648-649 (1993) (internal citations omitted).

When Attorney Maher decided to forego the other transportation options available to him, and instead submitted a written continuance after his verbal request for continuance was denied, his behavior was such that he acted with reckless disregard as well as wrongful intent. The willfulness of his conduct in this instance is further demonstrated by Attorney Maher's

---

[9] According to the Supreme Court Disciplinary Board Attorney Directory, Attorney Maher is located in Lehigh County which is a neighboring county to Northampton County.

record, outlined *supra*, reflecting a continuing course of conduct in failing to comply with court directives.

**D. This Court Acted in Accordance with Pennsylvania's Code of Civility**

Attorney Maher contends that, given his "exigent circumstances that necessitated the granting of a continuance" in the instant matter, this Court did not "abide by the Pennsylvania Code of Civility, Part 1 concerning a judge's duties to lawyers, et al." Our Supreme Court adopted the Code of Civility with the intent of encouraging "lawyers, judges, and court personnel to practice civility and decorum and to confirm the legal profession's status as an honorable and respected profession that observes courtesy and civility as a matter of course." *See* Pa. Code of Civility, Preamble. We submit, however, that the Code of Civility, while it serves an important role as a reminder to judges and lawyers to act with courtesy and civility, does not "supersede or alter existing disciplinary codes or standards of conduct and may not be used as a basis for litigation, lawyer discipline, or sanctions." *Id.* It is often appropriate and necessary for a Court to implement its inherent authority in holding in contempt of court an attorney who acts in blatant disregard of the Court's authority.

Contrary to Attorney Maher's contention that we did not abide by the Code of Civility, finding Attorney Maher in contempt was necessary in order to effectuate our duties in accordance with the Code of Civility and in accordance with the efficient administration of justice. Article I of the Code of Civility, which pertains to a judge's duties to lawyers and other judges, provides in pertinent part the following:

1. A judge must maintain control of the proceedings and has an obligation to ensure that proceedings are conducted in a civil manner.

2. A judge should show respect, courtesy and patience to the lawyers, parties and all participants in the legal process by treating all with civility.

14

...

7. A judge should be punctual in convening trials, hearings, meetings and conferences.

8. A judge should be considerate of the time constraints upon lawyers, parties and witnesses and the expenses attendant to litigation when scheduling trials, hearings, meetings and conferences to the extent such scheduling is consistent with the efficient conduct of litigation.

Pa. Code of Civility, Art. I. In accordance with the duties set forth above, this Court must maintain control of the proceedings; show respect to all lawyers and participants in the legal process; punctually convene hearings; and be considerate of time constraints on lawyers, parties, and witnesses. In the instant case, Father, his counsel, a witness who was present pursuant to a subpoena, and the Court were ready and prepared for the scheduled hearing. Accordingly, we took appropriate action in holding the hearing at the scheduled time and issuing a Rule to Show Cause on Attorney Maher.

Moreover, we point out that the Code of Civility goes beyond Article I to include Article II, pertaining to a lawyer's duties to the court. These duties include in relevant part the following:

9. A lawyer should be punctual and prepared for all court appearances.

10. A lawyer should avoid ex parte communications with the court, including the judge's staff, on pending matters in person, by telephone or in letters and other forms of written communication unless authorized. Communication with the judge on any matter pending before the judge, without notice to opposing counsel, is strictly prohibited.

11. A lawyer should be considerate of the time constraints and pressures on the court in the court's effort to administer justice and make every effort to comply with schedules set by the court.

...

17. A lawyer should demonstrate respect for other lawyers, which requires that counsel be punctual in meeting appointments with other lawyers and considerate of the schedules of other participants in the legal process; adhere to commitments, whether made orally or in writing; and respond promptly to communications from other lawyers.

15

Pa. Code of Civility, Art. II.

Attorney Maher cites to portions of the Civility Code in his argument, but the Code must be considered in its entirety, together with Attorney Maher's own actions before the Court. While we do not make it a practice of holding attorneys in contempt, indeed the undersigned has never done so prior to Attorney Maher, we have an obligation to hold an attorney in contempt when he intentionally and illegitimately disregards the authority of the Court and takes no care with regard to the administration of justice.

With his actions, Attorney Maher did a disservice to his client, to opposing counsel, to opposing counsel's client, and to the judiciary. His blatant disregard for the Court's authority was unacceptable, and his excuse was weak and lacking in credibility. In order to vindicate the dignity and authority of the court and to protect the interests of the general public, it is imperative to punish an attorney of record that chooses not to appear in court when scheduled. Accordingly, Attorney Maher's appeal lacks merit and should be denied.

BY THE COURT,

_____
JENNIFER R. SLETVOLD, Judge

Date:

8/31/16

16

SS00 16-17
TCO 2

IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY,
PENNSYLVANIA
CIVIL DIVISION

| | | |
|---|---|---|
| BRENDA I. DREISBACH | : | |
| *Plaintiff* | : | No. C48-CV-2015-5404 |
| | : | |
| v. | : | CIVIL ACTION - LAW |
| | : | |
| | : | 3829 EDA 2016 |
| ANTHONY MONTEFUSCO | : | |
| *Defendant* | : | |

## MEMORANDUM OPINION PURSUANT TO PA.R.A.P. 1925(A)

This Memorandum Opinion is filed in accordance with Pennsylvania Rule of Appellate Procedure 1925(a). Joseph P. Maher, Esq. (hereinafter, "Attorney Maher") filed a Notice of Appeal on December 5, 2016, from this Court's Order dated October 21, 2016, which found Attorney Maher in contempt of court and fined him $500 for deliberately disobeying a clear directive of this Court. Attorney Maher is a third party in this case as he represented Plaintiff, Brenda I. Dreisbach (hereinafter, "Ms. Dreisbach"). By way of background, Attorney Maher represented Ms. Dreisbach with respect to several captioned matters pertaining to child custody and relocation. During the course of these matters, we held Ms. Dreisbach in contempt once and held Attorney Maher in contempt twice. This appeal pertains to our second Order of contempt against Attorney Maher.[1]

## PROCEDURAL HISTORY

For background purposes, there have been two other parallel appeals taken from the undersigned's Orders docketed at trial court number C48-CV-2015-5404. The first was an

---

[1] Attorney Maher's appearance on behalf of Ms. Dreisbach has since been withdrawn per this Court's instructions, as more fully explained below, due to a conflict of interest which was placed on the record before the undersigned and in a separate proceeding regarding Ms. Dreisbach's relocation request before the Honorable Samuel P. Murray of this Court.

appeal of Ms. Dreisbach from an Order holding her in contempt, which appeal has since been quashed by the Superior Court.[2] The second is Attorney Maher's appeal from an Order holding him in contempt for failure to appear at a scheduled court-ordered hearing.[3] Attorney Maher appealed our first contempt Order against him, and that appeal is still pending.

In the instant matter, we held Attorney Maher in contempt for continuing to act as counsel for Ms. Dreisbach in spite of several directives from two judges of this Court that he cease the representation. On July 13, 2016, the Honorable Samuel Murray of this Court conducted a hearing pursuant to Ms. Dreisbach's request for relocation in custody. On that date, Attorney Maher indicated to Judge Murray that he would be withdrawing his appearance from representing Ms. Dreisbach because he intended to be a fact witness in the relocation matter as well as in an underlying protection from abuse matter involving the same parties.[4] Judge Murray noted several times on the record that Attorney Maher had a conflict of interest with respect to his representation of Ms. Dreisbach.[5],[6] As a result, Judge Murray granted Attorney Maher leave

---

[2] Ms. Dreisbach has since appealed the Superior Court's decision to quash her appeal to the Pennsylvania Supreme Court.

[3] The instant case is the second time that we have held Attorney Maher in contempt in this case. For the Superior Court's convenience, the complex procedural background of this case at the time of Attorney Maher's involvement is outlined in our Memorandum pursuant to Pa.R.A.P. 1925 (a), which was filed on August 31, 2016 with regard to Attorney Maher's appeal from our Order holding him in contempt for failure to appear.

[4] The notes of testimony of the July 13, 2016 proceeding before Judge Murray were made part of the record during Attorney Maher's October 21, 2016 contempt hearing.

[5] At the July 13, 2016 hearing, Attorney Maher indicated that he would be withdrawing his appearance on behalf of Ms. Dreisbach because he would be a fact witness in the underlying Protection from Abuse and/or relocation matters. When Judge Murray asked Attorney Maher why he would be a fact witness, Attorney Maher stated:

> Well, Your Honor, as Attorney Kollet knows and she mentioned it once before in court in another proceeding, I am also the Godfather of the older child. So since this gets involved with both of them, you know – I've seen both the younger child and the older child in various stages there, so it's possible I might possibly be involved in this one, but I am definitely involved with the older child and so that sort of – the two cases are becoming intermingled particularly because attorney Kollet is doing both of them.

N.T. at p. 8. With respect to the older child, Attorney Maher further explained that he has seen her on numerous occasions over the last three or four months, and it was revealed that he became her Godfather, not at her birth, but

2

to withdraw as counsel for Ms. Dreisbach, and Attorney Everett Cook assumed representation of Ms. Dreisbach.

On July 22, 2016, the undersigned conducted a conference with respect to Ms. Dreisbach's appeal from our April 29, 2016 Order holding her in contempt. The purpose of that hearing was to determine who would appropriately represent Ms. Dreisbach before the Superior Court because, as of that date, she had three attorneys of record: Attorney Maher, Attorney Cook, and Attorney Ian Musselman. At this conference, we asked Ms. Dreisbach what her wishes were with respect to whom she would like to represent her on appeal. Ms. Dreisbach stated on the record, "Apparently, as you stated, Your Honor, the conflict that you feel at hand it's probably best that Attorney Cook probably represent me on all cases in regards to Northampton County to prevent any further conflicts." *See* N.T., 7/22/16, at p. 15.[7] As a result of the conflict that was noted by Judge Murray and by the undersigned, as well as Ms.

---

just a few months prior when she received First Holy Communion. *Id.* at pp. 9-10. Judge Murray noted several times on the record that this created a conflict of interest. *Id.* at pp. 9-10. Judge Murray acknowledged that Attorney Maher's significant involvement with Ms. Dreisbach's oldest child created a conflict of interest, which conflict was heightened by the fact that Mr. Maher also babysat for Ms. Dreisbach's children. *Id.* This fact was especially relevant because, as Judge Murray noted, opposing counsel was alleging in the Protection from Abuse matter that the oldest child was used too frequently as a babysitter. *Id.* at p. 11. Judge Murray then stated to Attorney Maher, "I do not think you should be involved in the case." *Id.* Attorney Maher agreed with Judge Murray at the time of the July 13, 2016 hearing when he stated, "[t]hat's my understanding, Your Honor. It's become very complicated here." *Id.*

[6] Attorney Maher admitted his potential to be a fact witness in at least one other of Ms. Dreisbach's matters. Rule of Professional Conduct 3.7 provides the following:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
> (1) the testimony relates to an uncontested issue;
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
> (3) disqualification of the lawyer would work substantial hardship on the client.
> (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

PA ST RPC Rule 3.7. Also, as noted *infra*, Ms. Dreisbach herself indicated that she thought it was best for her to proceed with alternate counsel.

[7] The notes of testimony of the July 22, 2016 proceeding were made part of the record during Attorney Maher's October 21, 2016 contempt hearing.

Dreisbach's own wishes, we directed Attorney Maher, via a clear Order, to engage in no further activity with respect to representing Ms. Dreisbach either before this Court or before the Superior Court in her matters involving custody and relocation.

At the July 22, 2016 hearing, the following interaction took place on the record between Attorney Maher and the undersigned:

| | |
|---|---|
| **THE COURT:** | "Attorney Maher, I am directing you to have no further activity as far as acting as counsel for Ms. Dreisbach pertaining to anything in the trial court or in the Superior Court in the custody and relocation matter bearing case number 2015-5404. Do you understand?" |
| **MR. MAHER:** | "Your Honor, does that include my case because it's the only thing that's the docket number that they have for that." |
| **THE COURT:** | "It does not. You can represent yourself on appeal from your own contempt petition but you cannot represent Ms. Dreisbach or any way act as her representative before the court here or the Superior Court with respect to her custody, her relocation, or her Superior Court appeal. Do you understand?" |
| **MR. MAHER:** | "I understand." |
| **THE COURT:** | "Is anything I said to you unclear?" |
| **MR. MAHER:** | "No, Your Honor. It's not." |

N.T. (7/22/16) at pp. 17-18.

Importantly, no challenge or appeal was filed with respect to the July 22, 2016 Order directing Attorney Maher to cease his representation of Ms. Dreisbach in the aforementioned matters.

At the time of the July 22, 2016 conference, we granted Attorney Musselman leave to withdraw, and Attorney Cook, who represented Ms. Dreisbach in her relocation and protection from abuse matters, stated that he would be willing to also represent her with respect to the appeal before the Superior Court on her appeal from the contempt Order. Attorney Cook

4

subsequently filed a Statement of Matters Complained of on Appeal on behalf of Ms. Dreisbach on August 1, 2016.

On August 18, 2016, the Superior Court filed an Order indicating the untimeliness of Ms. Dreisbach's appeal of the undersigned's contempt Order of April 29, 2016 and directing Ms. Dreisbach to show cause as to the basis of the Superior Court's jurisdiction over her appeal. When this Court received a copy of the August 18, 2016 Order, we noticed that it had been sent only to Attorney Maher as opposed to Attorney Cook. As a result, we forwarded a copy of the Order to Attorney Cook on August 31, 2016.

In spite of the undersigned's clear directive of July 22, 2016, instructing Attorney Maher to engage in no further activity in the trial court or in the Superior Court on behalf of Ms. Dreisbach, on August 31, 2016, Attorney Maher filed a response on behalf of Ms. Dreisbach pursuant to the Superior Court's rule to show cause. In that filing, Attorney Maher indicates, "It was decided between the three counsel that it was best that Attorney Maher handle the reply to this Honorable Court's August 18, 2016 Rule to Show Cause." Accordingly, on September 29, 2016, the undersigned issued a rule to show cause on Attorneys Maher and Cook to show why they should not be held in contempt of the July 22, 2016 Order prohibiting Attorney Maher from engaging in any further activity on behalf of Ms. Dreisbach.

On October 21, 2016, Attorney Maher and Attorney Cook appeared before the undersigned for a hearing pursuant to the rule to show cause. After considering all testimony and evidence that Attorney Maher had to offer at this hearing, we found that Attorney Maher deliberately disobeyed our Order of July 22, 2016 and that he did so in contravention of Ms. Dreisbach's stated wishes on the record. Specifically, in Attorney Maher's August 31, 2016 response to the Superior Court, he stated that "[i]t was decided between the three counsel that it

5

was best that Attorney Maher handle the reply to this Honorable Court's August 18, 2016 Rule to Show Cause." At his contempt hearing on October 21, 2016, Attorney Maher, himself, admitted on the record that he never spoke with Attorney Cook about such an agreement. N.T. (10/21/16) at p. 14. Further, Attorney Cook credibly testified at this hearing that he never spoke to Attorney Maher about an agreement which would entail Attorney Maher replying to the Superior Court. *Id.* at p. 6. On this basis, we found him in contempt of court and fined him $500.

Attorney Maher filed a Notice of Appeal to the Superior Court of Pennsylvania on December 5, 2016 from this Order finding him in contempt of court.[8] On January 4, 2017, Attorney Maher filed a Concise Statement of Matters Complained of on Appeal.

## QUESTIONS PRESENTED

In Attorney Maher's somewhat confusing Concise Statement, he raises the following as issues:

A. "Whether the Trial Court committed an error of law and/or abuse of discretion in that Maher is of the contention that the procedure – or lack thereof – as to the Rule to Show Cause without a Motion for Contempt, violates Maher's procedural due process rights under the Pennsylvania and U.S. Constitutions and the Pennsylvania and Northampton County Rules of Civil Procedure to have advance notice as to why it is alleged that he has committed some contemptuous action?"

B. "Whether the Trial Court committed an error of law and/or an abuse of discretion in that Petitioner is of the contention that Judge Sletvold exercising a 'duel [sic] role', i.e. hearing officer and 'prosecutor', in this contempt matter constitutes a violation of Maher's substantive due process rights under the Pennsylvania and U.S. Constitutions to have a fair, full and complete, non-prejudicial hearing on his alleged contemptuous behavior under the present exigent circumstances that existed on October 21, 2016?"

C. "Whether the Trial Court committed an error of law and/or an abuse of discretion in that Maher contends that this Honorable Court does not have subject matter jurisdiction of the alleged 'misconduct' [sic] See, Rule of Prof. Conduct, 8.4(d), in

---

[8] We note that on December 5, 2016, Attorney Maher filed a Petition for Leave to Proceed In Forma Pauperis for purposes of this appeal; however, following a hearing, the Honorable Paula Roscioli denied this Petition.

6

this regard, but rather that such authority – pursuant to Article V, §10(c) of the Pennsylvania Constitution and Rule of Disciplinary Enforcement 103 and 201 – lies with The Disciplinary Board of the Supreme Court of Pennsylvania?"

D. "Whether the Trial Court committed an error of law and/or an abuse of discretion in that even if the Trial Court did have subject matter [sic] in this matter regarding the above stated issues, that the Trial Court did not have jurisdiction in that the long dormant custody case should have been previously dismissed pursuant to Pa.R.C.P.1915.4 [sic] given said inactivity and thus no case of controversy existed at any time while all of these proceedings occurred?"

E. "Whether the Trial Court committed an error of law and/or an abuse of discretion in that Maher should not have been excluded from the appeal of this case filed at 2200 EDA 2016 given that the Trial Court had no jurisdiction to remove him per Pa.R.A.P. 1701?"

F. "Whether the Trial Court committed an error of law and/or an abuse of discretion in that no conflict between Maher and the minor child in this case "SM" existed and that the possibility that he may need to be called as a witness in either the Relocation (handled by Judge Murray) or PFA (handled by Judge Zito) matters in the Northampton County trial court between July 13, 2016 and August 19, 2016 never existed on August 18 given that he was never called as a witness in either proceeding or that such a conflict only potentially existed vis-à-vis SM's older half-sister, 'VD'?"

G. "Whether the Trial Court committed an error of law and/or an abuse of discretion in that Maher should have been permitted to call Dreisbach as a witness at the October 21, 2016 Rule to Show Cause hearing since even if some "attorney client privilege" as alleged by Cook such a privilege is waivable by Dreisbach as the client not raised by Cook essentially as a defense for his negligence in not filing a response to the Superior Court's Rule which constituted malpractice by simply refusing to due [sic] so claiming as Maher pointed out he was being told that neither Cook (who it should be noted also withdraw as counsel for Dreisbach at this same hearing) nor Attorney Musselman (who had already withdrawn) were going to do so since Maher "[sic]knew the most about the issue why the appeal should have been permitted to continue?"

H. "Whether the Trial Court committed an error of law and/or an abuse of discretion in that Maher was never permitted to question Cook before Sletvold summarily dismissed him after only her questioning of him as to why he failed to file a response creating the need for Maher to file an emergency response to the Superior Court's rule?"

I. "Whether the Trial Court committed an error of law and/or an abuse of discretion in that at the time Sletvold held Maher in contempt the entire issue was moot in that the Superior Court had already long before dismissed Dreisbach's contempt appeal?"

7

J. "Whether the Trial Court committed an error of law and/or an abuse of discretion in that given that the Northampton County [sic] never served Maher, pursuant to Pa.R.C.P. 236 with the October 21, 2016 Order finding him in contempt that his appeal filed on December 5, 2016 was filing [sic] prematurely?"

*See* Attorney Maher's "Concise Statement of Matters Complained of on Appeal Pursuant to PA. R. A. P. 1925 (b)" at ¶ 4 (A-J).

## DISCUSSION

"Each court is the exclusive judge of contempts against its process," and on appeal, the trial court's finding of contempt will only be reversed when there is clearly an abuse of discretion. *Com. v. Jackson*, 532 A.2d 28, 31 (Pa. Super. 1987). Therefore, when reviewing a contempt conviction, much reliance is given to the discretion of the trial judge. *Com. v. Worthy*, 512 A.2d 39, 40 (Pa. Super. 1986). Unless the trial court overrides or misapplies the law in reaching its conclusion or its judgment is manifestly unreasonable, an appellate court will not find an abuse of discretion merely for an error of judgment. *Com v. Baker*, 564 Pa. 192, 198, 766 A.2d 328, 331 (2001).

In this case, Attorney Maher appears to raise ten issues on appeal; however we primarily note that these issues are largely incomprehensible. Nevertheless, we will attempt to address each of the issues to a degree permitted by our understanding of them. We also note that with respect to Attorney Maher's first three issues, he raised the same three statements of error in his Concise Statement of Matters Complained of on Appeal, filed on August 10, 2016.[9]

We address each of Attorney Maher's issues in turn.

---

[9] This Statement of Matters was made by Attorney Maher with respect to his appeal of our Order finding him in contempt for deliberately neglecting a scheduled court appearance on April 29, 2016. The appeal pertaining to that matter is currently pending before the Superior Court.

8

## A. Whether this Court had Subject Matter Jurisdiction to Find Attorney Maher in Contempt

Contrary to Attorney Maher's contention that we had no authority to find him in contempt pursuant to Article V of the Pennsylvania Constitution, we submit that a trial court judge's contempt power flows inherently from historical common law and from the judicial power granted by the Pennsylvania Constitution. It is well-settled that "[c]ourts possess an inherent power to enforce their orders by way of the power of contempt." *Dep't of Envtl. Prot. v. Cromwell Twp., Huntingdon Cnty.*, 613 Pa. 1, 32 A.3d 639, 653 (2011) (citations omitted). This power is derived from "a right inherent in courts *and is incidental to the grant of judicial power under Article 5 of our Constitution.*" *Com. v. McMullen*, 599 Pa. 435, 961 A.2d 842 (2008) (emphasis added). Further, we point out that although the Crimes Code abolished common law crimes (*See* 18 Pa.C.S. §107(b)), it also provided in its preliminary provisions that "[t]his section does not affect the power of a court to ... punish for contempt or to employ any sanction authorized by law for the enforcement of an order ..." *See* 18 Pa.C.S. §107(c).

This inherent power of a trial judge to enforce orders specifically includes the power to impose summary findings of criminal contempt, punishing willful misconduct that obstructs the administration of justice. *Com. v. Garrison*, 478 Pa. 356, 365, 386 A.2d 971, 975 (1978).[10] Nevertheless, in seeking to regulate the manner of the exercise of the power of summary contempt, the legislature restricted the imposition of summary punishments for contempts of court to the following cases:

> (1) The official misconduct of the officers of such courts respectively.
> (2) Disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court.
> (3) The misbehavior of any person in the presence of the court, thereby

---

[10] We note that the term "misconduct" simply refers to "behavior that is inappropriate to the role of the actor." *Himes v. Himes*, 833 A.2d 1124 (Pa. Super. 2003).

9

obstructing the administration of justice.

42 Pa.C.S.A. §4132.

In this matter, we imposed a summary punishment for contempt because we found that Attorney Maher deliberately took action in direct defiance of a clear Order of Court, without a legitimate excuse. Deliberate disobedience of a court Order, if established, falls within the purview of the prohibition set forth under subsection two of 42 Pa.C.S.A. §4132.[11]

Given the foregoing, Attorney Maher's first issue lacks merit. It is without question that this Court possessed the inherent power to find Attorney Maher in contempt for deliberately violating a clear Order of Court which directed him to refrain from representing Ms. Dreisbach in any matters captioned under trial court docket number C-48-CV-5404-2015.

## B. Whether Attorney Maher's Procedural Due Process Rights Were Violated

Contempt may be of a civil or criminal nature. This distinction between a civil and criminal contempt is crucial because the classification determines what procedural rights are conferred. *Com. v. Ashton*, 824 A.2d 1198, 1202 (Pa. Super 2003). "The distinction between criminal and civil contempt is ... a distinction between two permissible judicial responses to contumacious behavior. These judicial responses are classified according to the dominant purpose of the court." *Com v. Griffiths*, 15 A.3d 73, 77 (Pa. Super. 2010). It is the judge's purpose in crafting the contempt order that determines whether the Order is characterized as civil or criminal contempt. The purpose of criminal contempt is to vindicate the Court's authority, and therefore, to punish the contemnor for his actions; the contemnor, unlike with civil contempt, is powerless to escape sanctioning by compliance. *See Ingebrethsen v. Ingebrethsen*, 661 A.2d 403, 405 (Pa. Super. 1995).

---

[11] Under 42 Pa.C.S.A. § 4132(2), courts are permitted to use their direct contempt power to punish "disobedience or neglect" of a court's "lawful process." Courts have interpreted this provision to mean that judges have the power to compel compliance with their formal orders. *See* 14 West's Pa. Prac., Crim. Offenses & Defenses § 2:93 (6th ed.).

10

As discussed *supra*, we intended to make, and did make, an adjudication of criminal contempt that falls within the purview of 42 Pa.C.S.A. §4132 (2). We did so to admonish Attorney Maher and to vindicate the authority of the Court. This was not a situation where Attorney Maher could remedy his misconduct by compliance. Summary action permits the court to eliminate traditional steps involved in an adjudication, including all that goes with a conventional court trial such as "the issuance of process, service of complaint and answer, holding of hearings, taking evidence, listening to arguments, awaiting briefs, [and] submission of findings." *See Sacher v. United States*, 343 U.S. 1, 9, 72 S.Ct. 451, 455, 96 L.Ed. 717, 724 (1952). However, we acknowledge that the contemnor must be given an opportunity to rebut the charges. *Com. v. Pruitt*, 764 A.2d 569, 576 (Pa. Super. 2000).

In the case *sub judice*, Attorney Maher was afforded procedural safeguards. He was given notice that a charge of contempt was being considered by the Court, and he was afforded an opportunity to be heard.

Specifically, we issued a Rule to Show Cause on Attorney Maher on September 29, 2016, and Attorney Maher responded to the Rule Returnable on October 21, 2016 when he appeared for a hearing regarding why he should not be held in contempt for authoring a response to the Superior Court and filing same on behalf of Ms. Dreisbach when he was under a clear Order of Court prohibiting him from taking any further action as Ms. Dreisbach's counsel in that matter. Attorney Maher was given an unrestrained opportunity to be heard on October 21, 2016 which is abundantly clear in the transcript of testimony that has been made part of the record.[12]

---

[12] We further discuss Attorney Maher's opportunity to be heard in section H below wherein we address Attorney Maher's allegation that he was "summarily dismissed" after our questioning of Attorney Cook at the October 21, 2016 contempt hearing.

11

## C. Whether Attorney Maher's Substantive Due Process Rights Were Violated

As discussed, we found Attorney Maher to be in criminal contempt pursuant to 42 Pa.C.S.A. §4132 (2). The appellate courts of this Commonwealth have interpreted this Section as requiring the following four elements to support a finding of criminal contempt for "disobedience or neglect":

(1) The [court's] order or decree must be definite, clear, specific and leave no doubt or uncertainty in the mind of the person to whom it was addressed of the conduct prohibited;
(2) The contemnor must have had notice of the specific order or decree;
(3) The act constituting the violation must have been volitional; and
(4) The contemnor must have acted with wrongful intent.

*Com. v. Zacher*, 689 A.2d 267, 268–69 (Pa. Super. 1997) (citations omitted). Further, in order to prove contempt, the evidence must support that the alleged contemptuous act was "intentional disobedience or an intentional neglect of the lawful process of the court." *Pruitt*, 764 A.2d at 574 (citation omitted). Our Superior Court has held that in order to prove that an attorney acted intentionally, it is sufficient to demonstrate that they acted with reckless disregard. *McCusker v. McCusker*, 631 A.2d 645 (Pa. Super. 1993). A subjective intent to obstruct the administration of justice is not a requisite of criminal contempt. *Com. v. Owens*, 496 Pa. 16, 24, 436 A.2d 129, 133 (1981).

The first element requires that an officer of the Court clearly and without a doubt knew that which he was required or prohibited by the Court to do. The evidence here shows that Attorney Maher knew, without a doubt, of the underlying Order directing him to cease any further representation on behalf of Ms. Dreisbach in her matters docketed at trial court number C-48-CV-5404-2015. As noted *supra*, the colloquy placed on the record at the July 22, 2016 hearing made abundantly clear that Attorney Maher was to cease his representation of Ms. Dreisbach. *See* N.T. (7/22/16) at pp. 17-18.

12

Attorney Maher indicated that he understood the underlying Order. It is also clear that Attorney Maher had notice of this specific Order, which satisfies the second element above.

The third element focuses on whether Attorney Maher's violation was volitional. Attorney Maher made a deliberate choice to author a document and file same in the Superior Court in bold defiance of our Order. There is no question that Attorney Maher's Superior Court filing was not one made by mistake. In fact, Attorney Maher intentionally misrepresented facts to the Superior Court about why he was the attorney making the filing on Ms. Dreisbach's behalf.

Finally, the third element regarding volition goes hand-in-hand with the fourth element which addresses whether the contemnor acted with wrongful intent. "The minimum intent required to prove contempt is 'a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful.' ... However, ... direct (as well as subjective) intent is not necessary where a reckless disregard for the directions of the court can be proven." *McCusker*, 631 A.2d at 648-649 (1993) (internal citations omitted). For the reasons stated above, including Attorney Maher's admission of making false statements in his August 31, 2016 Superior Court filing, we submit that this filing was made volitionally in an attempt to bypass our Order of July 22, 2016. Thus, Attorney Maher's behavior was such that he acted with reckless disregard as well as wrongful intent.[13]

## D. Whether this Court Had Proper Jurisdiction to Hold Attorney Maher In Contempt

In this Statement of Error, it appears that Attorney Maher contends that we did not have jurisdiction to hold him in contempt on October 21, 2016 because Ms. Dreisbach's custody

---

[13] The willfulness of Attorney Maher's conduct in this instance is further demonstrated by his continuing course of conduct in failing to comply with court directives. We have previously outlined this course of conduct in our Memorandum Opinion pursuant to Pa.R.A.P. 1925(a) filed on August 31, 2016.

13

matter, bearing docket number C-48-CV-2015-5404, was dormant pursuant to Pa.R.C.P. 1915.4.[14]

In response to this issue raised by Attorney Maher, we point out that during the July 22, 2016 conference at which we issued the underlying Order prohibiting Attorney Maher from any further representation of Ms. Dreisbach, not once did Attorney Maher indicate a belief that Ms. Dreisbach's custody case was "dormant" or in any in violation of Rule 1915.4.[15] Moreover, this issue is waived because it concerns the merits of the underlying July 22, 2016 Order wherein this Court ruled that Attorney Maher was prohibited from representing Mrs. Dreisbach in any matters docketed in the trial court at C-48-CV-5404-2015, which includes the above-referenced custody matter. Attorney Maher did not appeal that Order, and as such, the Order became final.

Because Attorney Maher was under a final Order pursuant to which he was not to represent Mrs. Dreisbach any further in the aforementioned matters, his filing of August 31, 2016 was in direct violation of this Court's clear Order of July 22, 2016. Therefore, a finding of contempt was warranted. Any jurisdictional issue Attorney Maher may have had with the July 22, 2016 underlying Order is waived as a result of his failure to appeal same.

_____

[14] This Rule of Procedure is entitled, "Prompt Disposition of Custody Cases."

[15] Additionally, while it is irrelevant for purposes of this appeal, it is unclear to this Court what Attorney Maher means when he refers to Ms. Dreisbach's custody matter as "the long dormant custody case." The Complaint in Custody was filed in June of 2015, however, the docket will reflect that Ms. Dreisbach has since been availing herself to the processes of this Court's custody system. There have been various conferences with our Custody Master, and multiple custody Orders have been put in place since the filing of the Complaint. Moreover, as discussed above, Ms. Dreisbach, through Attorney Maher, filed a Notice of Relocation on July 13, 2016, which would have directly impacted the pending custody matter. Judge Murray denied Ms. Dreisbach's request for relocation, and Ms. Dreisbach ultimately appealed this denial, extending the protracted status of the relocation matter, and therefore, the custody matter. Importantly, on September 15, 2016, Judge Murray, who is the Judge handling Ms. Dreisbach's custody and relocation matters, issued an Order that states in relevant part as follows: "Pursuant to Pennsylvania Rule of Civil Procedure 1915.4 (D), it is hereby ordered and decreed that this Court has extended the date for a decision to October 31, 2016 ... As a result of the length of the proceedings, this extension is being made for good cause." On November 23, 2016, Ms. Dreisbach filed a motion to dismiss the custody proceeding, and Judge Murray denied same on December 13, 2016. Ms. Dreisbach has also appealed this Order issued by Judge Murray, and we understand that this appeal is currently pending before the Superior Court.

14

### E. Whether this Court Had Jurisdiction to Exclude Attorney Maher from the Appeal Filed at "2200 EDA 2016" [16]

Attorney Maher's argument on this point is premised on Pa.R.A.P. 1701, which provides that "after an appeal is taken ... the trial court or other government unit may no longer proceed further in the matter." However, we primarily submit that this issue is waived because Attorney Maher did not appeal our Order of July 22, 2016 with regard to a lack of jurisdiction. Even if this issue is not deemed waived for purposes of this appeal, we point out that Rule 1701 further provides in subsection (c) the following:

> (c) Limited to matters in dispute.—Where only a particular item, claim or assessment adjudged in the matter is involved in an appeal ..., the appeal ... shall operate to prevent the trial court or other government unit from proceeding further with only such item, claim or assessment, unless otherwise ordered by the trial court or other government unit or by the appellate court or a judge thereof as necessary to preserve the rights of the appellant.

Since the question presented in Ms. Dreisbach's appeal, docketed at 2202 EDA 2016, which was pending at the time this Court directed Attorney Cook to proceed as counsel for Ms. Dreisbach, related only to Ms. Dreisbach's contempt, it did not prevent this Court from considering whether Mr. Maher had a conflict of interest that precluded him from representing Ms. Dreisbach further. In other words, the Order challenged in Ms. Dreisbach's pending appeal was neither relevant to nor at issue to whether Attorney Maher had a conflict in representing Ms. Dreisbach further. *See In re Griffin*, 690 A.2d 1192, 1199 (Pa. Super. 1997).

### F. Whether this Court Committed an Error of Law and/or Abuse of Discretion in Finding that Attorney Maher Had a Conflict of Interest in Representing Ms. Dreisbach

This statement of matters complained of on appeal is waived because it concerns the merits of the underlying July 22, 2016 Order wherein this Court ruled that Attorney Maher was

---

[16] No matter pertaining to these parties has been docketed at 2200 EDA 2016. We note that the appeal pertaining to the Order finding Ms. Dreisbach in contempt, which was ultimately quashed by the Superior Court, and to which we assume Mr. Maher refers herein was docketed at 2202 EDA 2016.

prohibited from representing Mrs. Dreisbach in any matters docketed in the trial court at C-48-CV-5404-2015. As we discussed *supra*, Attorney Maher did not appeal that Order, and as such, the Order became final. Importantly, we point out that the underlying Order of July 22, 2016 did not contain any conditions or time constraints pursuant to which Attorney Maher could have resumed his representation of Ms. Dreisbach with respect to matters under docket number C-48-CV-2015-5404. Due to a clear conflict of interest which was noted by Judge Murray as well as Ms. Dreisbach, our Order simply and clearly directed Attorney Maher to engage in no further activity in the trial court or in the Superior Court on behalf of Ms. Dreisbach in matters under docket C-48-CV-2015-5404.

Simply put, Attorney Maher was under a final Order pursuant to which he was not to represent Mrs. Dreisbach any further in the aforementioned matters. Accordingly, his filing of August 31, 2016 was in direct violation of this Court's clear Order of July 22, 2016, and therefore, a finding of contempt was warranted. Any issue Attorney Maher may have had with the merits of the July 22, 2016 underlying Order is waived as a result of his failure to appeal same.

### G. Whether this Court Committed an Error of Law and/or Abuse of Discretion in Prohibiting Attorney Maher from Calling Ms. Dreisbach as a Witness in Attorney Maher's Contempt Hearing of October 21, 2016

At his October 21, 2016 contempt hearing, Attorney Maher did not provide a compelling reason to call Ms. Dreisbach as a witness when such testimony had the potential to expose Ms. Dreisbach to substantial risk, including waiving her attorney client privilege with Attorney Cook. We emphasize herein, as we did during the October 21, 2016 hearing, that Ms. Dreisbach is a party to this Court in matters of the utmost importance to her involving her family. As such, it would have been entirely inappropriate for Attorney Maher to elicit testimony from her to defend

16

his violation of a court Order. This is especially so when Attorney Maher had already admitted to the Court that his proscribed filing of August 31, 2016 to the Superior Court was supported by falsities. Any purpose Attorney Maher had with regard to Ms. Dreisbach's testimony would be inconsequential.

Ms. Dreisbach, with her testimony, would not be able to ameliorate Attorney Maher's direct violation of our Order or any reasons Attorney Maher may have had had for violating our Order. As stated in our discussion *supra*, this is a matter involving criminal contempt, and this was not a situation where Attorney Maher could have remedied his misconduct by compliance, resolution, or otherwise. Therefore, at most, Attorney Maher could have elicited whether Ms. Dreisbach specifically asked him to file a response to the Superior Court; however, Ms. Dreisbach is not vested with the power to overrule an Order of the trial Court. Thus, no compelling reason for Ms. Dreisbach's testimony was offered by Attorney Maher at his contempt hearing which would have justified the substantial risk of detriment to Ms. Dreisbach in the future.

**H. Whether this Court "summarily dismissed" Attorney Maher "after only her questioning of him" During the Contempt Hearing of October 21, 2016**

During the October 21, 2016 contempt hearing, the Court made a record of the events that had transpired leading up to the issuance of the September 29, 2016 Rule to Show Cause. Thereafter, we took Attorney Cook's testimony with respect to the Rule issued upon him. The overwhelming remainder of the October 21, 2016 contempt hearing, however, was dedicated to Attorney Maher's testimony regarding his position. *See* Notes of Testimony (N.T.), 10/21/16, at pp. 11-23. In fact, the majority of this entire hearing was dedicated to Attorney Maher's testimony. As we discussed above, Attorney Maher had ample opportunity to be heard, and the transcript speaks for itself in this matter.

17

Additionally, near the conclusion of this hearing, the Court gave all counsel the opportunity to state anything else that they may have for the record. *Id.* at p. 24. Attorney Maher used this opportunity to discuss his belief as to when Attorney Cook may have filed a concise statement of matters complained of on appeal on behalf of Ms. Dreisbach in her appeal.[17] *Id.* at pp. 24-25.

This additional comment by Attorney Maher had nothing to do with his contempt at issue and/or with the ultimate untimeliness of Ms. Dreisbach's appeal which, in his mind, would have somehow necessitated his involvement on her behalf such that defiance of a court Order was appropriate. Attorney Maher offered nothing further during his contempt hearing. However, he was in no way impeded from doing same.

## I. Whether "the entire issue was moot" at the Time this Court Held Maher in Contempt

In this Statement of Error, Attorney Maher seems to argue that because the Superior Court quashed Ms. Dreisbach's appeal with respect to our Order finding *her* in contempt, this Court did not have the authority to find Attorney Maher in contempt of the July 22, 2016 Order which he violated while Ms. Dreisbch's appeal was still pending. This issue is entirely without merit.

The Order that was challenged in Ms. Dreisbach's quashed appeal is neither relevant to nor at issue in the instant contempt proceeding against Attorney Maher. It is Attorney Maher's very involvement in the quashed appeal that is the issue, not the result of his involvement. Therefore, this statement of error should be dismissed as meritless.

---

[17] When the Court initially outlined the procedural background of the case during the October 21, 2016 hearing, the Court misstated the date on which Attorney Cook filed the concise statement of matters complained of on appeal on Ms. Dreisbach's behalf. The Court indicated that Attorney Cook filed same on July 11, 2016, when, in fact, he filed it on August 1, 2016.

18

J. "Whether the Trial Court committed an error of law and/or an abuse of discretion in that given that the Northampton County [sic] never served Maher, pursuant to Pa.R.C.P. 236 with the October 21, 2016 Order finding him in contempt that his appeal filed on December 5, 2016 was filing [sic] prematurely?"

This statement of error is confusing and incomprehensible. Therefore, we cannot properly address same. To the extent Attorney Maher disputes the timeliness of his own appeal, we submit that this Court never raised untimeliness as an issue with respect to the instant appeal. As the docket reflects, Attorney Maher filed his Notice of Appeal in this matter on December 5, 2016. We subsequently issued an Order pursuant to Pa.R.A.P. 1925(b) on December 13, 2016 directing Attorney Maher to file a concise statement of the errors complained of on appeal within twenty-one (21) days. Thereafter, Attorney Maher filed his Concise Statement of Matters Complained of on Appeal on January 4, 2017. [18]

BY THE COURT,

Date:

JENNIFER R. SLETVOLD, Judge

---

[18] Notably, however, Attorney Maher was made aware, in person, of this Court's finding of contempt at the October 21, 2016 hearing, yet he did not file a Notice of Appeal with respect to this finding until December 5, 2016.

19